

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ALLSTATE INSURANCE COMPANY,

                Plaintiff,

                                    Docket No.: 09-03582 9 (SLT)(RLM)

       -against-

VIVIANE ETIENNE, VIVIANE ETIENNE CARE, P.C.,
V.E. MEDICAL CARE, P.C., JAMAICA
DEDICATED MEDICAL CARE, P.C., JASON SHEVETZ, M.D.,
SEBASTIAN MEDICAL, P.C., ACUTE CARE MEDICAL, P.C.,
RICHARD DOMINICK BERARDI, JR., D.O., ARCO MEDICAL
NY, P.C., NEOMY MEDICAL, P.C., BILLY NABIL GERIS,
M.D., JAMAICA MEDICAL PLAZA, P.C., YVETTE
DAVIDOV, D.O., S&R MEDICAL, P.C., LEE CRAIG
NAGOURNEY, M.D., and AMETHYST MEDICAL, P.C.,
AKO MEDICAL, P.C.,
(collectively the "Clinic Defendants")

       -and-

CHOONG KWON KIM, M.D.
MAGGIE MORR, M.D.,
MARAT TSIRLIN, M.D.,
(collectively the "EDX Testing Defendants")

------------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FRCP 12(B)(6) AND
9(B), ON BEHALF OF VIVIANE ETIENNE, VIVIANE ETIENNE MEDICAL
CARE, P.C, JAMAICA DEDICATED MEDICAL CARE, P.C., AND V.E.
MEDICAL CARE, P.C. ("The Etienne Parties")**

                            Hoffman Polland & Furman
                         Attorneys for the Etienne Parties
                         220 East 42d Street, Suite 435
                         New York, New York 10017
                         (212) 338-0700

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................ii, iii

PRELIMINARY STATEMENT ....................................................1

STATEMENT OF THE CASE ....................................................2

I.      POINT I
      THE RICO CLAIMS AGAINST THE ETIENNE
      PARTIES DEFICIENTLY ALLEGE THAT THE ETIENNE
      FRAUDULENT ENTERPRISE IS AN ENTITY SEPARATE AND
      APART FROM THE PATTERN OF ACTIVITY DESCRIBED IN
      ALLSTATE'S COMPLAINT ....................................................3

II.     POINT II
      BOYLE v. UNITED STATES (2009) DID NOT ELIMINATE THE
      REQUIREMENT THAT TO BE SUFFICIENT, A RICO COMPLAINT
      MUST ALLEGE THE EXISTENCE OF AN ENTERPRISE THAT IS
      DISTINCT FROM THE PATTERN OF ACTIVITY IN WHICH IS
      ALLEGED TO ENGAGE....................................................6

      Introduction ....................................................7

      Boyle vs. United States ....................................................7

      Misinterpretations and Reinterpretations of Boyle ...........................8

      RICO Law Prior to Boyle ....................................................12

      Boyle Does Not Cure the Defects in Allstate's RICO claims...................13

III.    POINT III
      ALLSTATE'S COMPLAINT LACKS SUFFICIENT SPECIFICITY
      AGAINST THE ETIENNE PARTIES AND SHOULD BE
      MISMISSED UNDER FRCP 9(b) ....................................................14

VI.    POINT IV.
      THE STATE LAW CLAIMS SHOULD ALSO BE DISMISSED..............17

      CONCLUSION....................................................18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

Ammirato  et al. vs. Duraclean International, Inc., 2010 U.S. Dist. Lexis 10594 (E.D.N Y. 2010) ................................................................................................- 12 -

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ...........................- 4 -

Atlantic Gypsum Co., Inc. v. Lloyds International Corp., 753 F.Supp. 505, 512 (S.D.N.Y.1990)........................................................................................- 15

Beauford v Helmsley, 843 F.2d 103 (2d Cir.) , rev'd, 865 F.2d 1386 (2d Cir.) (en banc) - ........................................................................................................13

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))...................................................................................................4

Boyle ,supra, 129 S. Ct. at 2248-2250 (Stevens and Breyer dissenting)(emphasis added) ........................................................................................................- 10

Boyle v. United States,   U.S.   129 S. Ct. 2237, 2245-46, 173 L. Ed. 2d 1265 (2009) .- ........................................................................................................17

Boyle, supra, 129 S.Ct at, 2245 .....................................................................- 9

CIT Group/ Equip. Fin., Inc. v. Krones, Inc., 2009 U.S. Dist. LEXIS 84427 at n.10 (W.D. Pa.  2009)......................................................................................- 8

Civil RICO: The Judges' Perspective, and Some Notes on Practice for North Carolina Lawyers, 12 Campbell L. Rev. 145, 146 (1990). .............................................- 1

Coleman, et el., v. Commonwealth Land Title Insurance Co. 2010 U.S. Dist. LEXIS 3469 (E.D.Pa. 2010) ..............................................................................- 12

Conte v. Newsday Inc et al., 2010 U.S. Dist. LEXIS 28502  (E.D.N.Y. 2010)...........- 12

Di Vittorio v. Equidyne Extractive Industries, 822 F.2d 1242, 1247 (2d Cir. 1987),..- 15

DiVittorio, 822 F.2d at 1247 .........................................................................- 15

Elsevier Inc., et al vs. W.H.P.R., Inc, et al.,2010 U.S. Dist. LEXIS 16104 (S.D.N.Y. 2010 ...................................................................................................- 9

First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159 (2d Cir. 2004), .. ........................................................................................................13

Fuji Photo Film U.S.A., Inc., vs. Mcnulty et al .  2009 U.S. Dist. LEXIS 96119 (S.D.N.Y 2009)......................................................................................- 12

Hutton v. Klabal, 726 F.Supp. 67, 72 (S.D.N.Y.1989), ......................................- 18

IUE AFL–CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1057 (2d Cir. 1993)............- 15

Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (quoting Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir. 1991)), aff'd 113 F.3d 1229 (2d Cir. 1997). ......................................................................................- 14

Laterza v. American Broadcasting Co., 581 F.Supp. 408, 413 (S.D.N.Y. 1984).........- 15

Lou v. Belzberg, 728 F.Supp. 1010, 1022 (S.D.N.Y. 1990) ................................- 15

Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir. 1986) .............................................- 15

Morrow v. Black, 742 F.Supp. 1199, 1203 (E.D.N.Y.1990) .......................................- 14

Rao, V. P. Products North America, Inc., 589 F.3d 389 (7th Cir. 2009) ...................- 12

Ross v. Bolton, 904 F.2d 819, 823 (2d Cir. 1990) ......................................... - 15
Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L. Ed. 2d 346
    (1985) ............................................................................................... - 9
State Farm Mutual Automobile Insurance Company vs. Cohan, D.D.S., 2009 U.S. Dist.
    LEXIS 125653 (E.D.N.Y. 2009) ............................................................ - 9
Travelers Ins. Co. v. Keeling, 996 F.2d 1485, 1490 (2d Cir.1993) .............................. - 17
Twombly, 550 U.S. at 555 .................................................................................. - 8
United Mine Workers v. Gibbs, 383 U.S. 715 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) - 17
    -
United States v Burden, 2010 U.S. App. LEXIS 6594 (2d Cir 2010) ......................... - 12
United States v. Int'l Longshoremen's Ass'n, 518 F. Supp. 2d 422, 474 (E.D.N.Y. 2007)
    (emphasis added). ........................................................................... - 13
United States v. Riccobene, 709 F.2d 214, 223-224 (3d Cir. 1983) ............................ - 6
United States v. Rivieccio, 661 F.Supp. 281, 290 (E.D.N.Y.1987) ........................... - 15
United States v. Turkette, 452 U.S. 576, 583, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981).
    .... ....................................................................................................... 11
United States v. Turkette, 452 U.S. 576, 69 L. Ed. 2d 246, 101 S. Ct. 2524 (1981) ..... - 9
Zigman v. Giacobbe, 944 F.Supp. 147, 156 (E.D.N.Y. 1996). ................... .......... - ... 17

**Statutes**
18 U.S.C. 1962(c) .............................................................................................. 2
18 U.S.C. 1962(d) .............................................................................................. 2
28 U.S.C. § 1367(c)(3 ....................................................................................... - 17
N.Y. Ins. Law §§ 5101 et seq. and 11 NYCRR §§ 65 et seq ...................................... - 2


**Other Authorities**
H.J. Inc., 492 U.S. 914 ...................................................................................... - 13
Id. (citing Twombly, 550 U.S. at 556). ................................................................... - 4
Id. at 2244 ........................................................................................................ - 8
Id. at 2246 ........................................................................................................ - 8
Id. at 570; Iqbal, 129 S. Ct. at 1950-51 ................................................................ - 8
Id., at 31-35; see also Brief for Petitioner 26-28, 33; Tr. of Oral Arg. 6, 8, 17 ........... - 14
The Crime of Being a Criminal (pts. 3 & 4), 87 Colum. L. Rev. 920, 974-975 (1987).... -
    ................................................................................................................. 7

**Rules**
Fed.R.Civ.P 9(b) ............................................................................................. - 14 -
FRCP 12(b)(6) and 9(b) ................................................................................... - 1 -
Rule 12(b)(6) .................................................................................................. - 4 -

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted in support of a motion to dismiss Plaintiff's complaint pursuant to FRCP 12(b)(6) and 9(b), in favor of our clients Viviane Etienne, Viviane Etienne Medical Care, P.C, Jamaica Dedicated Medical Care, P.C., and V.E. Medical Care, P.C., ("the Etienne Parties").

The Etienne Parties have been charged in Plaintiff's Second Cause of Action with a substantive civil RICO count under 18 U.S.C. 1962(c) as an "association in fact" enterprise, entitled "The Etienne Fraudulent Testing Enterprise", and, in the Third Cause of action, RICO conspiracy under 18 U.S.C. 1962(d). This Motion is being brought in accordance with the prehearing conference held before the Court on March 11, 2010 in which the Court granted the Defendants permission to seek a motion to dismiss upon the grounds that (1) the RICO allegations insufficiently allege the existence of an enterprise separate and apart from alleged racketeering activity, and (2) the allegations of fraud are insufficient under the pleading requirements for RICO and FRCP 9(b).

One eminent jurist described the underlying reason behind the judicial distaste for civil RICO and the concomitant restrictions on civil association-in-fact enterprises simply as "a weapon envisioned as a rifle to shoot mobsters became a shotgun pointed at everybody." Hon. David B. Sentelle, Civil RICO: The Judges' Perspective, and Some Notes on Practice for North Carolina Lawyers, 12 Campbell L. Rev. 145, 146 (1990). The case at bar represents such an instance, and should be dismissed at this stage.

## STATEMENT OF THE CASE

Plaintiff's complaint purports to be a civil RICO and RICO conspiracy action (18 U.S.C 1962(c) and 1962(d)) with pendant state law claims alleged against seven (7) physicians and their professional medical service corporations ("PCs") (collectively "the Clinic Defendants") and three (3) affiliated physicians ("the EDX Testing Defendants"),  in which the plaintiff insurer seeks the return plus treble damages of monies paid to the defendant PCs for certain physical examinations and medical testing on behalf of its insureds under New York's no-fault system of reimbursement to motor vehicle accident victims ( N.Y. Ins. Law §§ 5101 et seq. and 11 NYCRR §§ 65 et seq.). Plaintiffs denominate each of the seven sets of Clinic Defendants as a separate "enterprise", alleging against each set five causes of action, to wit: substantive RICO, RICO conspiracy, common law fraud, unjust enrichment and (against the associated EDX physician(s) only) aiding and abetting RICO liability. The remaining cause of action seeks a declaratory judgment against payment to the PCs of the now-questioned claims.

In reality, the complaint here is a hodge-podge of unrelated allegations which plaintiffs very loosely weave into a civil RICO action. There are essentially five "theories" of allegedly wrongful conduct, few if any of which, even if true, are RICO predicates: (1) that electro-diagnostic ("EDX") professionals should have been denominated as "independent contactors" who were obliged to bill independently for their services, (2) that there was "upcoding" on the billing for some of the patient physical examination codes, (3) that the EDX tests were improperly performed, (4) that other medical tests, namely computerized range of motion, were medically unnecessary and (5) the reports for a portion of the

EDX testing, typically performed by technicians, were medically impossible duplicates. What the plaintiff fails to adequately set forth is how the supposed association-in–fact enterprise differs from the "Etienne Fraudulent Testing Enterprise". The "Defendant's Respective Roles in the Scheme" begins with ¶ 40. It refers to the billing for the "Fraudulent Services:" which are defined in the very first paragraph as consisting of, and only of, the five (5) listed services cited above. There is no other indication that this entity does anything more in ¶ 40. That the "Defendants purport to treat patients …(¶40, last sentence) hardly distinguishes this firm the denominated fraudulent services.

The Complaint goes on in ¶¶ 56 through 59 to attempt to describe one of the previously defined "Fraudulent Services", the Initial Examination (which is not "testing" at all but is by definition a part of the racketeering activity). It then goes on to describe allegedly fraudulent Range of Motion and Muscle testing (¶¶60 to 75), allegedly fraudulent consultations (¶¶ 76 through 78), the "fraudulent" EDX testing (¶¶ 79 through 112)[1].

Finally, we get to Paragraph 126, which we will not treat here, but is analyzed in POINT I, infra, because it is pleaded especially in an attempt to avoid this Motion.

## POINT I

---

[1]     The Complaint also adds two paragraphs (¶ 113 and 114) which state that the Defendants "subjected minors" the previously described Fraudulent Treatment protocol, but this is obviously only added to inflame, and adds nothing to save the Complaint.

**THE RICO CLAIMS AGAINST THE ETIENNE PARTIES DEFICIENTLY
ALLEGE THAT THE ETIENNE FRAUDULENT ENTERPRISE IS AN ENTITY
SEPARATE AND APART FROM THE PATTERN OF ACTIVITY DESCRIBED
IN ALLSTATE'S COMPLAINT**

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation  of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations, citations and alterations omitted). Thus, unless a plaintiffs well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible, [the plaintiffs] complaint must be dismissed." Id. at 570; Iqbal, 129 S. Ct. at 1950-51.

The instant Allstate Complaint merely gives a boilerplate nod to the fundamental[2] RICO element that the complaint meaningfully alleges the existence of an enterprise that is separate and apart from the allegations of "racketeering" activity.

---

[2]     In United States v. Turkette, 452 U.S. 576, 583 (1981), the Court applied these principles to the same statutory language at issue raised herein and held that "the Government must prove **both** the existence of an 'enterprise' **and** the connected 'pattern of racketeering activity.'" 452 U.S. at 583 (emphasis added). The Court recognized that the terms refer to two separate and distinct concepts in the statute: "The 'enterprise' is an entity, a group of persons associated together for a common purpose of engaging in a course of conduct. The 'pattern of racketeering activity' is, on the other hand, a series of

Allstate's attempt to comply with the fundamental Turkette requirements is contained in Complaint paragraph 126, which states in its entirety as follows:

> 126.    The Etienne Fraudulent Testing Enterprise is distinct from and has an existence beyond the pattern of racketeering that is described herein, namely by recruiting, employing overseeing and coordinating many professionals and non-professionals who have been responsible for facilitating and performing a wide variety of administrative and professional functions beyond the acts of mail fraud (i.e., the submissions of the fraudulent bills to Allstate and other insurers), by creating and maintaining patient files and other records resulting from the performances of the Fraudulent Services, by recruiting and supervising personnel, by negotiating and executing various billing and collection agreements, facility lease agreements, equipment lease agreement and management agreements, by maintaining the bookkeeping and accounting functions necessary to manage the receipt and distribution of the insurance proceeds and by retaining collection lawyers whose services also were used to generate payments from insurance companies to support all of the aforesaid functions.(emphasis added).

An analysis of this critical paragraph illustrates the deficiency.

---

criminal acts as defined by the statute." Id. The Court reached the obvious conclusion that the "'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages . . . The existence of an enterprise at all times remains a separate element which must be proved  by the Government." Id.

Separate "pattern" and "enterprise" elements are not only inherent in the language and structure of RICO but are also consistent with RICO's underlying preventive purpose. Turkette recognized RICO's "preventive" purpose and Congressional concern with organized crime's infiltration of legitimate businesses. Id. at 593. An enterprise need not be legitimate to fall under RICO because a criminal enterprise also poses an ongoing threat as it acquires money and power. See id. Thus, the concern was not simply that some organization  exist but also that it function as a "continuing unit." Id. at 583. This concern is echoed in H.J. where the Court added further definitional clarity to the "pattern" element and concluded that a pattern requires not   only a relationship between predicate acts but also a "threat of continuing activity." H.J., Inc. v. NW. Bell Tel. Co., 492 U.S. 229, 239 (1989). "Congress was concerned in RICO with long term criminal conduct." Id. at 242.

While it may not be necessary to show that the enterprise has some function wholly unrelated to the racketeering activity, but rather that it has an existence beyond that which is necessary merely to commit each of the acts charged as predicate racketeering offenses, this simply has never been done in the instant Complaint. The function of overseeing and coordinating the commission of several different predicate offenses <u>and other activities</u> on an on-going basis could be adequate to satisfy the separate existence requirement. <u>See e.g.</u> <u>United States v. Riccobene</u>, 709 F.2d 214, 223-224 (3d Cir. 1983). But this Complaint only discusses the five defined Fraudulent Services from Paragraph 1.

The meager attempt to accomplish that in Paragraph 126 just fails. It is all one sentence. It refers to the recruitment, overseeing, maintaining files and business agreements---<u>BUT ALL OF THESE TENETS ARE MODIFIED AND THEREFORE LIMITED TO THE DEFINED "FRAUDULENT SERVICES" OF THE PURPORTED ENTERPRISE</u>. There is nothing in this Paragraph—or any paragraph of the Complaint, which states, or makes it sufficiently "plausible" to assume, that in addition to these five services, the Moving Defendants are doing anything else

## POINT II

### BOYLE V UNITED STATES (2009) DID NOT ELIMINATE THE REQUIREMENT THAT TO BE SUFFICIENT, A RICO COMPLAINT MUST ALLEGE THE EXISTENCE OF AN ENTERPRISE THAT IS DISTINCT FROM THE PATTERN OF ACTIVITY IN WHICH IT IS ALLEGED TO ENGAGE

**Introduction**

      The question of whether the enterprise has a "separate existence" from the pattern of activity through which it is conducted must be the focus of inquiry in every illegitimate enterprise case. As one prominent jurist has observed,

> if RICO is justified by any distinctive harm, it is precisely that which occurs when the ordinary association of individuals for a criminal purpose becomes a regularized, identifiable organization carrying out repeated criminal acts over a period of time... . Some requirement of structure, then, should be an essential part of the definition of enterprise under RICO, .... The heart of the problem is how to define in words the degree of organization that separates 'organized' from 'disorganized' crime.

Lynch, RICO: The Crime of Being a Criminal (pts. 3 & 4), 87 Colum. L. Rev. 920, 974-975 (1987).

      According to Plaintiff Allstate, the Etienne Fraudulent Testing Enterprise" consists of Dr. Etienne, her PCs and the two EDX testing physicians she employed. In what manner, then, does this differ from the purported "pattern" of fraudulent testing described in the Complaint? Per the analysis undertaken above in Point I, it clearly does not.

**Boyle vs. United States**

      It is anticipated that in opposing this motion, Allstate will rely heavily on Boyle v. United States, U.S. 129 S. Ct. 2237, 2245-46, 173 L. Ed. 2d 1265 (2009), a case which clarified the standard for proving a RICO enterprise at trial. In Boyle, the Court held that an association-in-fact enterprise under RICO must still have a "structure," although the jury need not receive an instruction in these terms. Specifically, the Court wrote that an association-in-fact enterprise must have "at least three structural features:

a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Id. at 2244. However, it clarified that RICO enterprises are not limited to "business-like entities" and that they need not have a hierarchical structure or a "chain of command." Id. at 2246.

Boyle is not determinative of this motion, for numerous reasons. As one post-Boyle court put it, Boyle does not stand for the proposition that a plaintiff need not plead structural features related to an association in fact enterprise to be misplaced. "The Boyle court addressed the inadequacy of a jury instruction, not a pleading" CIT Group/ Equip. Fin., Inc. v. Krones, Inc., 2009 U.S. Dist. LEXIS 84427 at n.10 (W.D. Pa.  2009) . [3] Applying the recently announced rules for evaluating a complaint on a pre-answer motion to dismiss (see n. 1 below) yields a different result than the sustaining of the post-proof jury instruction in Boyle.

### Misinterpretations and Reinterpretations of Boyle

Several of the District Courts seems to have given meaning to the Boyle decision that is simply not present in the Court's language or rationale of that case, much less the basic Supreme Court reasoning and rules announced in the seminal RICO precedents,

---

[3] The Supreme Court also recently clarified the appropriate pleading standard in Ashcroft v. Iqbal,  U.S.  , 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), setting forth a two-pronged approach for courts deciding a motion to dismiss. District courts are to first "identify  pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. Second, if a complaint contains "well-pleaded factual allegations, a court. should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has    acted unlawfully." Id. at 1949 (quoting and citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 550, at 556-557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))

Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985)and United States v. Turkette, 452 U.S. 576, 69 L. Ed. 2d 246, 101 S. Ct. 2524 (1981)[4].

In State Farm Mutual Automobile Insurance Company vs. Cohan, D.D.S., 2009 U.S. Dist. LEXIS 125653 (E.D.N.Y. 2009), the court erroneously observed that Boyle "seems to... have" abrogated the pleading requirement that a RICO enterprise be an separate and apart from the pattern of activity in which it engages Id. ,slip opinion at 20.

Similarly, in Elsevier Inc., et al vs. W.H.P.R., Inc, et al.,2010 U.S. Dist. LEXIS 16104 (S.D.N.Y. 2010) (a case in which plaintiffs' RICO complaint was dismissed for other pleading defects), the court expressly observed that the activity alleged in plaintiffs' complaint " need not have any existence apart from the predicate acts committed by its employees and/or associates" (slip opinion at 19), citing the Boyle opinion at p. 2245.

A review of the cited page, Page 2245, reveals that the Court said no such thing. The text of the Courts reasoning on that page, representing the crux of the decision, follows:

> 'Beyond that inherent in the pattern of racketeering activity.'[the portion of the jury charge in question in Boyle] This phrase may be interpreted in least two different ways, and its correctness depends on the particular sense in which the phrase is used. If the phrase is interpreted to mean that the existence of an enterprise is a separate element that must be proved, it is of course correct. As we explained in Turkette, the existence of an enterprise is an element distinct from the pattern of racketeering activity and 'proof of one does not necessarily

---

[4]  Turkette held that to plead an "association-in-fact" RICO enterprise, Plaintiffs must show: (i) that there exists an ongoing organization, formal or informal; (ii) that the various associates of the organization function as a continuing unit; and (iii) that the organization has an existence separate and apart from the alleged pattern of racketeering activity. Boyle did not change that requirement, but held only that need not have a hierarchical structure or a 'chain of command'; decisions may be made on an ad hoc basis and by any number of methods..." 129 S.Ct at, 2245.

establish the other.' [footnote omitted] 452 U.S., at 583, 101 S. Ct. 2524, 69 L. Ed. 2d 246.

On the other hand, if the phrase is used to mean that the existence of an enterprise may never be inferred from the evidence showing that persons associated with the enterprise engaged in a pattern of racketeering activity, it is incorrect. <u>We recognized in Turkette that the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise 'may in particular cases                              coalesce.                              Ibid.</u>

C

The crux of petitioner's argument is that a RICO enterprise must have structural features in addition to those that we think can be fairly inferred from the language of the statute. Although petitioner concedes that an association-in-fact enterprise may be an "'informal'" group and that "not 'much'" structure is needed, Reply Brief for Petitioner 24, he contends that such an enterprise must have at least some additional structural attributes, such as a structural "hierarchy," "role differentiation,' a 'unique modus operandi,' a 'chain of command,' 'professionalism and sophistication of organization,' 'diversity and complexity of crimes,' 'membership dues, rules and regulations,' 'uncharged or additional crimes aside from predicate acts,' an 'internal discipline mechanism,' 'regular meetings regarding enterprise affairs,' an 'enterprise 'name,'' and 'induction or initiation ceremonies and rituals.' Id., at 31-35; see also Brief for Petitioner 26-28, 33; Tr. of Oral Arg.                6,                8,                17.

We see no basis in the language of RICO for the structural requirements that petitioner asks us to recognize. As we said in <u>Turkette</u>, an association-in-fact enterprise is simply a continuing unit that functions with a common purpose. Such a group need not have a hierarchical structure or a 'chain of command'; decisions may be made on an ad hoc basis and by any number of methods -- by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence..... (emphasis added).

<u>Boyle</u>, <u>supra</u>, 129 S.Ct at, 2245.

Indeed, the consequences of these District Courts' mis-formulation of the instant RICO pleading requirement, which essentially renders the 'enterprise' requirement meaningless in association in fact cases, was foreshowed by the dissenting opinion (Justices Stevens and Breyer) in <u>Boyle</u>, which stated in pertinent part as follows:

> Our cases also make clear that an enterprise "is an entity separate and apart from the pattern of activity in which it engages." <u>United States v. Turkette</u>, 452 U.S. 576, 583, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981). As with the requirement that an enterprise have business-like characteristics, that an enterprise must have a separate existence is confirmed by § 1962(c) and <u>Reves</u>. If an entity's existence consisted solely of its members' performance of a pattern of racketeering acts, the "enterprise's affairs" would be synonymous with the "pattern of racketeering activity." Section 1962(c) would then prohibit an individual from conducting or participating in "the conduct of [a pattern of racketeering activity] through a pattern of racketeering activity" -- a <u>reading that is unbearably redundant, particularly in a case like this one in which a single pattern of activity is alleged. The only way to avoid that result is to require that an "enterprise's affairs" be something other than the pattern of racketeering activity undertaken by its members.</u> (foot note omitted)

> .........<u>There may be cases in which a jury can infer</u> that existence and continuity from the evidence used to establish the pattern of racketeering activity. <u>Ibid</u>. But that will be <u>true only when the pattern of activity is so complex that it could not be performed in the absence of structures</u> or processes for planning or concealing the illegal conduct beyond those inherent in performing the predicate acts. <u>More often, proof of an enterprise's separate existence will require different evidence from that used to establish the pattern of predicate acts.</u>

> ..... While I agree the word structure is not talismanic, I would hold that the instructions must convey the requirement that the alleged enterprise have an existence apart from the alleged pattern of predicate acts. The Court's decision, by contrast, will allow juries to infer the existence of an enterprise in every case involving a pattern of racketeering activity undertaken by two or more associates.

> <u>By permitting the Government to prove both elements with the same evidence, the Court renders the enterprise requirement essentially meaningless in association-in-fact cases.</u>

Boyle ,supra, 129 S. Ct. at 2248-2250 (Stevens and Breyer dissenting)(emphasis added)

Fortunately, many of the Circuit Courts of Appeal, including the Second Circuit, as well as many District Courts (including the Eastern and Southern Districts) , have not misinterpreted Boyle so as to eliminate the pleading requirement that the enterprise be distinct from the pattern of alleged activity. See United States v Burden, 2010 U.S. App. LEXIS 6594 (2d Cir 2010) (noting elimination of established hierarchical structure only); Rao, V. P. Products North America, Inc., 589 F.3d 389 (7th Cir. 2009) (reaffirming Boyle requirement that that there be a "pattern" of racketeering activity, which is an element distinct from the enterprise requirement.; Coleman, et el., v. Commonwealth Land Title Insurance Co. 2010 U.S. Dist. LEXIS 3469 (E.D.Pa. 2010)(It is well settled in RICO law that the alleged racketeering activity complained of by plaintiff must be separate and distinct from the enterprise itself); Conte v. Newsday Inc et al., 2010 U.S. Dist. LEXIS 28502  (E.D.N.Y. 2010) (granting 12(b)(6) motion under Boyle and prior Eastern District cases); Ammirato  et al. vs. Duraclean International, Inc., 2010 U.S. Dist. Lexis 10594 (E.D.N Y. 2010) (granting summary judgment to RICO defendants and noting that Boyle merely suggested a lower threshold for pleading association-in-fact enterprise; Fuji Photo Film U.S.A., Inc., vs. Mcnulty et al . 2009 U.S. Dist. LEXIS 96119 (S.D.N.Y 2009) (Although Boyle eliminates hierarchy requirement, even simplest enterprise must be a discrete economic association existing separately from the racketeering activity).

**RICO Law Prior to Boyle**

Although there has been some confusion in Second Circuit jurisprudence regarding the "enterprise" concept, see e.g., <u>Beauford v Helmsley</u>, 843 F.2d 103 (2d Cir.), <u>rev'd</u>, 865 F.2d 1386 (2d Cir.) (en banc), vacated and remanded for further consideration in light of <u>H.J. Inc.</u>, 492 U.S. 914 , original decision adhered to, 893 F.2d 1433 (2d Cir.) , cert. denied, 493 U.S. 992 (1989), come 2004, the Second Circuit expressly confirmed, as against a mere pleading, the application of the <u>Turkette</u> requirement that enterprise must be separate from the pattern of racketeering activity, <u>First Capital Asset Management, Inc. v. Satinwood, Inc.</u>, 385 F.3d 159 (2d Cir. 2004), dismissing the complaint. More recently, prior to Boyle, Judge Glasser, noting the prior confusion, rejected view that a RICO plaintiff need not allege and prove the traditional indicia of the enterprise element in order to state a claim under § 1962.

> In this Court's view, it remains the law in this Circuit that a RICO plaintiff alleging the existence of an association-in-fact RICO enterprise must plead and prove the existence of a group of individuals or other legal entities operating as a continuing unit with a formal or informal structure and united by some common purpose in order to state a valid claim. <u>The fact that the evidence necessary to prove the existence of the enterprise and the pattern of racketeering activity may coalesce in some cases does not undermine the fact that enterprise and pattern of racketeering remain conceptually distinct elements of a RICO violation, each of which must be alleged in the complaint in order to survive a Rule 12(b)(6) motion to dismiss.</u> This point is particularly important where, as here, the alleged enterprise is not a wholly illegitimate one, and the proof necessary to establish its existence cannot be expected to fully coalesce with that necessary to prove the pattern of racketeering

United States v. Int'l Longshoremen's Ass'n, 518 F. Supp. 2d 422, 474

(E.D.N.Y. 2007) (emphasis added).

**Boyle Does Not Cure the Defects in Allstate's RICO claims**

- 13 -

Thus, as can be seen, <u>Boyle</u> does not cure the inherent defect in Allstate's pleading. Even under <u>Boyle</u>, an enterprise requires some "structure"—structure that is simply missing from the hodge-podge of allegedly "fraudulent" activities repeatedly enumerated by Allstate, and echoed in its vain attempt to give it a structure in Paragraph 126. At best, even if the allegations had any substance, this would be a garden-variety fraud action belonging in state court, not an attempt to get a windfall of treble damages and attorney's fees by making allusions to real organized crime, which this is simply not.

### POINT III

### ALLSTATE'S COMPLAINT LACKS SUFFICIENT SPECIFICITY AGAINST THE ETIENNE PARTIES AND SHOULD BE MISMISSED UNDER FRCP 9(b)

Allegations of racketeering, it is often said, are the legal equivalent of a "thermonuclear device." <u>Katzman v. Victoria's Secret Catalogue,</u> 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (quoting <u>Miranda v. Ponce Fed. Bank</u>, 948 F.2d 41, 44 (1st Cir. 1991)), <u>aff'd</u> 113 F.3d 1229 (2d Cir. 1997). The mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants. As a result, courts are charged with flushing out frivolous RICO allegations at the earliest possible stage of litigation.

Predicate acts involving a type of fraud, such as mail fraud, must meet the additional rigorous pleading requirements of Fed.R.Civ.P 9(b). <u>E.g.</u>, <u>Morrow v. Black,</u>

742 F.Supp. 1199, 1203 (E.D.N.Y.1990) (recognizing the applicability of Rule 9(b) under such circumstances). Rule 9(b) provides:

> In all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally

A primary purpose of the specificity requirement of Rule 9(b) "is to insure that the defendant receives fair notice of plaintiff's claim, and is thus able to prepare a defense," Hutton v. Klabal, 726 F.Supp. 67, 72 (S.D.N.Y.1989), citing, Di Vittorio v. Equidyne Extractive Industries, 822 F.2d 1242, 1247 (2d Cir. 1987), as well as to protect a defendant's reputation and to avoid strike suits. See Ross v. Bolton, 904 F.2d 819, 823 (2d Cir. 1990); United States v. Rivieccio, 661 F.Supp. 281, 290 (E.D.N.Y.1987). To satisfy the particularity requirement of Rule 9(b), the allegations should "specify the time, place, speaker, and content of the alleged misrepresentations." IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1057 (2d Cir. 1993); DiVittorio, 822 F.2d at 1247, citing, Luce v. Edelstein, 802 F.2d 49, 54 (2d Cir. 1986). "These concerns are even more immediate in civil RICO actions, because such suits 'implicate the reputation interests of defendants accused of committing racketeering offenses.'" Atlantic Gypsum Co., Inc. v. Lloyds International Corp., 753 F.Supp. 505, 512 (S.D.N.Y.1990) (quotation omitted).

When multiple defendants are named in the alleged fraud, the fraud be particularized as to each one of them. See, e.g., Lou v. Belzberg, 728 F.Supp. 1010, 1022 (S.D.N.Y. 1990); United States v. Rivieccio, supra; Laterza v. American Broadcasting Co., 581 F.Supp. 408, 413 (S.D.N.Y. 1984).This task has hardly been accomplished here

Here, Allstate's Complaint fails to measure up to the heightened particularity requirements for a RICO action under Rule 9(b). With regard to the independent contractor issue, Paragraph 49 of the complaint alleges that "virtually" all of the PC bills either misrepresent that the EDX physician was an employee, or fail to identify the physician who performed the services. Which is it with regard to the Etienne parties?. We don't have any idea. "Sample" NF-3 (Exhibit 1) bills, even if, as plaintiff claims, they are "representative" do not answer the question. In any event, they fail to apprise the Moving defendants of the extent of the fraud allegations.

Plaintiff's allegations regarding the range of motion ("ROM")/ muscle tests (¶¶166 through 75) are entirely confusing. Are they "fraudulent" because they are duplicative, unbundled, or, as plaintiff also suggests (see e.g. ¶¶ 74(i) and 75(i)), not performed at all? With regard to the duplicate NCV studies, the fact that certain studies were allegedly identified not only within the described "Match Groups", but across several of these Match Groups as well ¶¶ 100-101), demonstrates more than anything that the EDX physicians neither knew nor had reason to know that the data they interpreted was also being sent, under different identity, to other EDX physicians for interpretation. How can plaintiff responsibly claim, as it does in conclusory manner, that the EDX physicians, much less the Clinic Defendants, knew that their NCV studies were duplicative? Here, the Iqbal plausibility analysis is again implicated. How can Defendants respond to such vague allegations. Nor should the Court be swayed by the elaborate flow charts (Exhibits 16 through 21), which shed no more light on the

required particularity than the complaint does. In fact, if anything, the flow charts confuse things more.

## POINT IV

## THE STATE LAW CLAIMS SHOULD ALSO BE DISMISSED

Although the Court would have jurisdiction over the remaining state law causes of action under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a), such claims "are so related" to the claims within the court's original jurisdiction that they "form part of the same case or controversy under Article III of the United States Constitution, the Court however may "decline to exercise supplemental jurisdiction over a claim" if the district court has dismissed all claims over which it had original jurisdiction." 28 U.S.C. § 1367(c)(3): See also United Mine Workers v. Gibbs, 383 U.S. 715 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (addressing the doctrine of "pendent jurisdiction," the predecessor to "supplemental jurisdiction").  This is especially so at the early stages of a litigation.  See Travelers Ins. Co. v. Keeling, 996 F.2d 1485, 1490 (2d Cir.1993) (in a case where "all federal-law claims are eliminated before trial, supplemental jurisdiction over the remaining state law claims should be declined, Zigman v. Giacobbe, 944 F.Supp. 147, 156 (E.D.N.Y. 1996).

Therefore, if this Court, as we submit it must, dismisses plaintiffs' RICO claims, which serve as this Court's sole source of original jurisdiction, this Court should also dismiss all the remaining state law claims.  At this early stage in the litigation, the

plaintiffs will not be prejudiced if they bring their state law claims in the New York

Supreme Court.

## <u>CONCLUSION</u>

Based on the foregoing, Allstate's Complaint should be dismissed in its entirety

against the Etienne Parties.

Dated:  New York, New York
       April 26, 2010

Respectfully submitted,

Hoffman Polland & Furman PLLC

By: _____
      Mark L Furman (MLF-4456)
      *Attorneys for the Etienne Parties*
      220 East 42d Street, Suite 435
      New York, New York 10017
      (212) 338-0700

## <u>AFFIDAVIT OF SERVICE</u>

STATE OF NEW YORK   )
                 ) SS:
COUNTY OF NEW YORK)

      CHANTAY SIMMONS, being duly sworn, deposes and says:

      I am not a party to the action, am over 18 years of age and reside in the County of New York City and State of New York.   On April 27, 2010, I served the within **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FRCP 12(B)(6) AND 9(B), ON BEHALF OF THE ETIENNE PARTIES,** at the address(es) designated by said attorney(s) for that purpose by depositing a true copy of same enclosed in a postpaid properly addressed wrapper, in an official depository under the exclusive care and custody of the United States post office within the State of New York, addressed to the following person at the last known address set forth after the name below:

<u>*Via Fed/ Ex(4/26/10)– 8682 6603 9020*</u>
Barry Levy, Esq.
Rivkin Radler LLP
926 RXR Plaza
Uniondale, NY 11556

<u>*First Class Mail only*</u>
Albert Y Dayan, Esq.
Law Offices of Albert Dayan
80-02 Kew Gardens Rd, St902
Kew Gardens, NY 11415

<u>*First Class Mail only*</u>
Richard A. Kraslow, Esq.
Richard A. Kraslow, PC
425 Broad Hollow Rd, St206
Melville, NY 11747

<u>*First Class Mail only*</u>
Matthew J. Conroy, Esq.
Matthew J. Conroy & Assoc. PC
350 Old Contry Road, Ste 106
Garden City, NY 11530

<u>*First Class Mail only*</u>
Alexander Levine, Esq.
Levine & Chong, LLC
1517 Franklin Ave, Ste 300
Mineola, NY 11501

<u>*First Class Mail only*</u>
Gary Tsirelman, Esq.
55 Washington St, Ste 606
Brooklyn, NY 11201

Sworn to before me this
27th day of April, 2010.

CHANTAY SIMMONS

ILLENE S. DEUTSCHER
Notary Public, State of New York
No. 01DE4986544
Qualified in Queens County
Commission Expires September 16, 2013