Docket No.:
09-CV-3582 (SLT) (RLM)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALLSTATE INSURANCE COMPANY,

Plaintiff,

-against-

VIVIANE ETIENNE, M.D., et al.

Defendants.

**MEMORANDUM OF LAW ON BEHALF OF PLAINTIFF ALLSTATE INSURANCE COMPANY IN OPPOSITION TO DEFENDANTS' MOTIONS FOR PARTIAL DISMISSAL**

RIVKIN RADLER LLP
Counsel for Plaintiff
ALLSTATE INSURANCE COMPANY
926 RXR Plaza
Uniondale, New York 11556-0926
(516) 357-3000

OF COUNSEL:

Barry I. Levy, Esq.
Michael P. Versichelli, Esq.
Max Gershenoff, Esq.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................ii

PRELIMINARY STATEMENT .................................................................................1

STATEMENT OF FACTS .......................................................................................1

    A.    The Defendants in This Action ...........................................................2

    B.    The Defendants' Interrelated Fraudulent Scheme ...............................3

    C.    The Defendants' Efforts to Conceal Their Fraud ...............................6

    D.    The Causes of Action.........................................................................7

ARGUMENT............................................................................................................7

    I.    PLAINTIFF'S RICO CLAIMS ARE SUFFICIENTLY PLEADED ................7

        A.    The Standards on a Motion to Dismiss Under Rule 12(b)(6)................7

        B.    The RICO Statute ..............................................................................9

        C.    The Enterprise Requirement...............................................................9

        D.    The Complaint Sufficiently Pleads an Association-in-Fact Enterprise........................................................................................11

        E.    The Complaint Meets the Distinctiveness Requirements.....................13

            1.    The Enterprise and the RICO Persons Are Distinct...................13

            2.    There Is No Requirement That the Enterprise Be Ascertainably Distinct From the Pattern of Racketeering Activity .................................................................................15

        F.    The Complaint Sufficiently Pleads a RICO Conspiracy ......................18

        G.    The Complaint Satisfies Rule 9(b)'s Specificity Requirements.............19

        H.    There Is No Basis For This Court to Decline Jurisdiction ....................24

    II.    TO THE EXTENT THAT THE COURT FINDS A DEFECT, ALLSTATE WOULD REQUEST LEAVE TO AMEND....................................................25

CONCLUSION.......................................................................................................25

## TABLE OF AUTHORITIES

### CASES

*AIU Ins. Co. v. Olmecs Med. Supply, Inc.*, 2005 U.S. Dist. LEXIS 29666 (E.D.N.Y. Feb. 22, 2005) .................................................................................. 10, 11, 13, 18, 20, 22

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) .......................... 8

*Allstate Ins. Co. v. Valley Physical Medicine & Rehabilitation, P.C.*, 2009 U.S. Dist. LEXIS 91291 (E.D.N.Y., September 30, 2009) ............................................. 10, 13, 19, 22

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) .................................................................................. 8

*Automated Teller Mach. Advantage LLC v. Moore*, 2009 U.S. Dist. LEXIS 68724 (S.D.N.Y. Aug. 6, 2009) ......................................................................................... 10, 11, 13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................................. 7

*Boyle v. United States*, __ U.S. __, 129 S. Ct. 2237 (2009) ...................... 10, 11, 13, 16, 17, 18

*Burrell v. State Farm and Cas. Co.*, 226 F. Supp. 2d 427 (S.D.N.Y. 2002) ............................ 9

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001) ........................................... 10

*Cleveland v. Caplaw Enters.*, 448 F.3d 518 (2d Cir. 2006) ...................................................... 8

*Conte v. Newsday, Inc.*, 2010 U.S. Dist. LEXIS 28502 (E.D.N.Y. March 25, 2010) ....... 14, 17

*Daniel v. Long Is. Housing Partnership, Inc.*, 2009 U.S. Dist. LEXIS 20251 (E.D.N.Y., March 13, 2009) ................................................................................................ 8

*Elsevier, Inc. v. W.H.P.R., Inc.*, 2010 U.S. Dist. LEXIS 16104 (S.D.N.Y. Feb. 19, 2010) .................................................................................................................................. 16, 25

*Fuji Photo Film U.S.A., Inc. v. McNulty*, 2009 U.S. Dist. LEXIS 96119 (S.D.N.Y. Oct. 14, 2009) .............................................................................................................. 17

*G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521 (S.D.N.Y. 2002) ........................ 13

*Giuliano v. Everything Yogurt*, 819 F. Supp. 240 (E.D.N.Y. 1993) ...................................... 20

*Globaltex Group, Ltd. v. Trends Sportswear, Ltd.*, 2009 U.S. Dist. LEXIS 38302 (E.D.N.Y., May 6, 2009) .............................................................................................. 8

*Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985) .................................................................. 8

ii

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) ................................................. 7

*Levine v. First Am. Title Ins. Co.*, 2010 U.S. Dist. LEXIS 2876
    (E.D. Pa. January 14, 2010) ....................................................... 14

*Liberty Mut. Ins. Co. v. Blessinger*, 2007 U.S. Dist. LEXIS 21781
    (E.D.N.Y. Mar. 27, 2007) ........................................................ 13

*Moss v. Morgan Stanley, Inc.*, 719 F.2d 5 (2d Cir. 1983) ............................. 9

*Oliver Schools, Inc. v. Foley*, 930 F.2d 248 (2d Cir.1991) ........................... 25

*Pavlov v. Bank of N.Y. Co.*, 25 Fed. Appx. 70 (2d Cir. 2002)..................... 15

*Petrucelli v. Hasty*, 605 F. Supp. 2d 410 (E.D.N.Y. 2009) .......................... 8

*Purchase Real Estate Group, Inc. v. Jones*, 2010 U.S. Dist. LEXIS 43201 (S.D.N.Y.
    Apr. 30, 2010) ................................................................... 15

*Rao v. BP Prods., N. Am., Inc.*, 589 F.3d 389 (7th Cir. 2009) ..................... 17

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339 (2d Cir.
    1994) ......................................................................... 9, 13

*SKS Constructors, Inc. v. Drinkwine*, 458 F. Supp. 2d 68 (E.D.N.Y. 2006).......................... 15

*Salinas v. United States*, 522 U.S. 52, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997) ........... 18, 19

*Sharkey v. Quarantillo*, 541 F.3d 75 (2d Cir. 2008)................................................. 7

*State Farm Mut. Auto. Ins. Co. v. CPT Medical Servcs., P.C.*, 2008 U.S. Dist. LEXIS
    71156 (E.D.N.Y. Sept. 5, 2008)............................................. 13, 19, 20, 22, 23

*State Farm Mut. Auto. Ins. Co. v. Cohan*, 2009 U.S. Dist.  LEXIS 125653 (E.D.N.Y.
    Dec. 30, 2009)........................................................ 9, 10, 16, 22

*State Farm Mut. Auto. Ins. Co. v. Grafman*, 2007 U.S. Dist. LEXIS 96751 (E.D.N.Y.
    May 22, 2007) .............................................................. 11, 18

*State Farm Mut. Auto. Ins. Co. v. Kalika*, 2006 U.S. Dist. LEXIS 97454 (E.D.N.Y.
    Mar. 16, 2006)............................................................ 11, 20, 21, 22

*State Farm Mut. Auto. Ins. Co. v. Liguori*, 589 F. Supp. 2d 221 (E.D.N.Y. 2008)..... 20, 22, 23

*The Jordan (Bermuda) Investment Co. Ltd. v. Hunter Green Investments Ltd.*, 154 F.
    Supp. 2d 682 (S.D.N.Y. 2001) ...................................................... 9

*United States v. Burden*, 600 F.3d 204 (2d Cir. 2010)(same) ................................ 11

*United States v. Burden*, 2010 U.S. App. LEXIS 6594 (2d Cir. Mar. 31, 2010) .................... 17

*United States v. Castro*, 669 F. Supp. 2d 288 (E.D.N.Y. 2009) ............................................. 10

*United States v. Ciccone*, 312 F.3d 535 (2d Cir. 2002) ......................................................... 18

*United States v. Errico*, 635 F.2d 152 (2d Cir. 1980) ............................................................ 16

*United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989) ................................................... 17

*United States v. Mazzei*, 700 F.2d 85 (2d Cir. 1983) ............................................... 15, 16, 17

*United States v. Philip Morris USA, Inc.*, 566 F.3d 1095 (D.C. Cir. 2009) ........................... 13

*United States v. Turkette*, 452 U.S. 576 (1981) .............................................................. 10, 17

*United States v. Yanotti*, 541 F.3d 112 (2d Cir. 2008) .......................................................... 19

*Vietnam Ass'n for Victims of Agent Orange v. Dow Chemical Co.*, 517 F.3d 104 (2d Cir. 2008) .............................................................................................................................. 8

## STATUTES

28 U.S.C. §1332 ................................................................................................................. 1, 24

18 U.S.C. § 1961(4) ................................................................................................................ 10

18 U.S.C. § 1964(c) .................................................................................................................. 9

Fed. R. Civ. P. 8(a) ................................................................................................................. 11

Fed. R. Civ. P. 9(b) ............................................................................................... 1, 9, 19, 20, 22

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 1, 7, 8

Fed. R. Civ. Proc. 15(a) .......................................................................................................... 25

RICO (18 U.S.C. § 1962(c)); .................................................................................................. 7, 9

## PRELIMINARY STATEMENT

Plaintiff Allstate Insurance Company ("Plaintiff" or "Allstate") respectfully submits this

Memorandum of Law in opposition to:

(i)     the motion by Defendants, Viviane Etienne, M.D., Viviane Etienne Medical Care, P.C., Jamaica Dedicated Medical Care, P.C. and V.E. Medical Care, P.C. (the "Etienne Defendants"), to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b);[1]

(ii)    the motion by Defendants Richard Dominick Berardi, Jr., D.O., Arco Medical NY, P.C. and Neomy Medical, P.C. (the "Berardi Defendants") to dismiss Plaintiff's Twelfth and Thirteenth Causes of Action pursuant to Fed. R. Civ. P. 12(b)(6); and

(iii)   the motion by Defendants Lee Craig Nagourney, M.D., AKO Medical, P.C. and Amethyst Medical, P.C. (the "Nagourney Defendants") (collectively with the Etienne Defendants and the Berardi Defendants, the "Moving Defendants") to dismiss Plaintiff's Twenty-Seventh and Twenty-Eighth Causes of Action pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).

As demonstrated herein, the Moving Defendants' motions are meritless and must be denied

in their entirety.   Allstate's complaint sufficiently pleads RICO claims against the Moving

Defendants and satisfies the requirements of Fed. R. Civ. P. 9(b).

## STATEMENT OF FACTS[2]

Since 2002, the Defendants in this action have engaged in a series of massive and interrelated

fraudulent schemes through which they stole more than $1,780,000.00 from Allstate by submitting,

---

[1] The Etienne Defendants principally seek dismissal of Plaintiff's Second and Third Causes of Action for failure to sufficiently plead a RICO claim and, upon such finding, dismissal of Plaintiff's pendent state law claims for fraud and unjust enrichment, as well as declaratory relief.   The Etienne Defendants do not otherwise challenge the sufficiency of Plaintiff's state law claims from a pleading standpoint.   They only ask this Court to decline supplemental jurisdiction in the event that Plaintiff's RICO claims are dismissed.   That position is legally incorrect as there would exist a separate jurisdictional basis for the claims pursuant to 28 U.S.C. §1332. Allstate is a citizen of Illinois while the Moving Defendants are all citizens of New York and/or New Jersey. See Allstate Complaint (Docket Entry No. 1 – filed 8/19/2009)(hereinafter "Complaint") at ¶¶ 7, 8, 10, 13, 15-17, 20-21 and 25-26.   Additionally, the amounts in controversy between Allstate and the Moving Defendants exceed $75,000. See Complaint at ¶¶ 143, 151, 213, 221, 318, 326.

[2] The facts discussed in this memorandum of law are taken from Allstate's Complaint, which must be accepted as true for purposes of this motion.

or causing to be submitted, thousands of fraudulent charges relating to initial examinations (the "Examinations"), digital range of motion and muscle tests (the "ROM/Muscle Tests"), neurological consultations (the "Consultations") and electrodiagnostic tests (the "EDX Tests"), including nerve conduction velocity tests ("NCVs") and electromyography tests ("EMGs") (collectively the "Fraudulent Services"). These services purportedly were rendered for diagnostic purposes to individuals ("Insureds") who were involved in automobile accidents and were eligible for insurance coverage under Allstate's no-fault insurance policies. See Complaint at ¶1.

A.       **The Defendants in This Action**[3]

The Defendants in this action fall into three general categories. The first set of Defendants is comprised of Viviane Etienne Medical Care, P.C., V.E. Medical Care, P.C., Jamaica Dedicated Medical Care, P.C., Sebastian Medical, P.C., Acute Care Medical, P.C., Arco Medical NY, P.C, Neomy Medical, P.C., Kath Medical, P.C., Jamaica Medical Plaza, P.C., Jamhil Medical, P.C., Amethyst Medical, P.C., Medical Polis, P.C., and S&R Medical, P.C (collectively the "PC Defendants"). See id. at ¶4. The PC Defendants are professional medical corporations that operate no-fault clinics within the New York metropolitan area, through which billing for the Fraudulent Services is submitted.

The second set of Defendants is comprised of the physicians who purport to own one or more of the PC Defendants. See id. at ¶¶2, 4. Not only do these Defendants purport to own the PC Defendants, they also conduct most of the fraudulent Examinations and ROM/Muscle Tests. See id. at ¶¶4, 40. These Defendants include Viviane Etienne, M.D., Jason Shevetz, M.D., Richard Dominick Berardi, Jr., D.O., Billy Nabil Geris, M.D., Serge Delaleu, M.D., Lee Craig Nagourney,

---

[3] Allstate has reached confidential settlements with, and dismissed its claims against the following Defendants: (i) Jason Shevetz, M.D., Sebastian Medical, P.C. and Acute Care Medical, P.C.; (ii) Billy Nabil Geris, M.D. and Jamaica Medical Plaza, P.C.; (iii) Yvette Davidov, D.O. and S&R Medical, P.C., (iv) Nikolai Logaduke and Medical Polis, P.C., (v) Kath Medical, P.C.; and (vi) Maggie Morr, M.D.. However, for purposes of this Memorandum of Law, we have summarized the allegations against all of the Defendants as they originally appeared in the Complaint.

M.D., Nikolai Lagoduke, M.D., and Yvette Davidov, D.O. (the "Purported Owner Defendants") (the PC Defendants and Purported Owner Defendants collectively are referred to as the "Clinic Defendants").

The third and final set of Defendants is comprised of physicians who are associated with the PC Defendants as independent contractors, and who – as alleged in the Complaint – purport to carry out the Consultations and EDX Tests on behalf of the PC Defendants. See id. at ¶¶ 4, 41. These Defendants include Choong Kwon Kim, M.D., Maggie Morr, M.D., and Marat Tsirlin, M.D. (collectively the "EDX Testing Defendants"). The individual fraudulent schemes alleged in the Complaint are interrelated through the EDX Testing Defendants, each of whom was associated with several of the Clinic Defendants at any one time, and by the very nature of the schemes, which were virtually identical across the various Defendant groups.

**B.    The Defendants' Interrelated Fraudulent Schemes**

The details of the interrelated schemes are fully outlined in the Complaint, but the schemes operated in the same manner and may be summarized, succinctly, as follows:

> (i)    Fraudulent Billing for Initial Examinations - When an Insured visits one of the PC Defendants' facilities, he or she virtually always receives an initial Examination, which is charged to Allstate separate and independent of the other Fraudulent Services. The billing for the Examinations is fraudulent inasmuch as it is almost always submitted under billing code 99205, 99244 or billing code 99245. According to the fee schedule applicable to claims for no-fault benefits (the "Fee Schedule"), the use of billing codes 99205, 99244 and 99245 typically requires that the patient present with a problem of moderate-to-high severity, requiring medical decision-making of moderate-to-high complexity. Furthermore, these codes typically represent that the physicians spent 60-80 minutes face-to-face with the patient and/or the patient's family. However, the Insureds who visit the PC Defendants' facilities typically spend 30 minutes or less with the examining physicians, and present with medical problems of low severity. Furthermore, the Examinations require no medical decision-making at all, insofar as virtually every Insured receives the same, boilerplate diagnosis of "post-traumatic headaches," "pain," and/or "sprain/strain," is told to return to the Clinic Defendant several times per week for follow-up examinations and medically unnecessary services, and receives an automatic referral for a Consultation. See id. at ¶¶56-59.

3

(ii)    Fraudulent Billing for Consultations – Based upon the fraudulent, pre-determined outcome of the initial Examinations, virtually every Insured is referred to one or another of the EDX Testing Defendants for a Consultation. Like the Examinations, the Consultations are fraudulent inasmuch as they are almost always billed under billing code 99244 or 99245, yet involve no actual medical decision-making because the outcomes are pre-determined -- virtually every Insured is "diagnosed" with "derangement" or "sprain/strain" in their back – and virtually always result in the EDX Tests. In addition, the Consultations are fraudulent inasmuch as the EDX Testing Defendants are independent contractors, not employees of the respective PC Defendants – yet the billing submitted through the PC Defendants for the Consultations routinely falsely states that the EDX Testing Defendants are employees of the respective PC Defendants. See id. at ¶¶76-78.

(iii)   Fraudulent Billing for EDX Tests – The EDX Tests are demonstrably fraudulent for a number of reasons. First, the EDX Tests are not tailored to the unique circumstances of any Insured, inasmuch as each of the EDX Testing Defendants virtually always tests the same nerves and muscles in every Insured. Second, when billing for NCVs, the Clinic Defendants frequently unbundle and/or double bill for charges for F-wave studies, which under the Fee Schedule are to be included in the underlying NCV charges. Third, the values contained in the NCV reports created by the EDX Testing Defendants and submitted with the Clinic Defendants' billing cannot possibly be valid. Allstate commissioned an independent medical review of the Defendants' NCV reports by Randall L. Braddom, M.D. ("Dr. Braddom"), who determined that duplicate NCV data were submitted across large groups of patients – a biological impossibility that conclusively demonstrates fraud. Indeed, Dr. Braddom found that NCV data often were duplicated across patients who purportedly received treatment months apart at several different PC Defendants, illustrating the interrelatedness of the Defendants' fraudulent schemes. Fourth, the EDX Testing Defendants routinely conduct medically unnecessary four-limb EMG studies, and frequently unbundle the charges into two, two-limb EMG studies, in order to maximize the fraudulent billing the Clinic Defendants can submit to Allstate. Fifth, the EDX Testing Defendants routinely conduct incomplete EMGs, then submit billing through the Clinic Defendants as if the tests were properly conducted. Sixth, an independent medical review determined that the EMG tests conducted by the EDX Testing Defendants frequently result in statistically impossible findings, indicating that they never were conducted in the first place. Finally, the EDX Tests are fraudulent inasmuch as the EDX Testing Defendants are independent contractors, not employees of the respective PC Defendants – yet the billing submitted through the PC Defendants for the EDX Tests routinely falsely states that the EDX Testing Defendants are employees of the respective PC Defendants. See id. at ¶¶79-112.

(iv)    Fraudulent Billing for ROM/Muscle Tests – In addition, despite the fact that virtually every Insured has already undergone manual range of motion and muscle strength testing during the initial Examinations, and despite the fact that reimbursement for this testing already is paid by Allstate as a component of the initial Examination, virtually every Insured that presents to any of the Clinic

4

Defendants is subjected to several rounds of digital ROM/Muscle Tests. Not only are these ROM/Muscle Tests duplicative and medically unnecessary, but the Clinic Defendants fraudulently unbundle the charges in order to maximize the fraudulent billing that they can submit to Allstate. See id. at ¶¶60-75.

The Examinations, Consultations, EDX Tests, and ROM/Muscle Tests that the Defendants allegedly provide are medically useless, and are performed according to a pre-determined, fraudulent protocol. See id. at ¶54. Each step in this fraudulent protocol is designed to falsely reinforce the rationale for the previous step, and provide a false justification for the subsequent step. For instance, the Examinations are carried out to provide a false basis for the ROM/Muscle Tests and Consultations. See id. The Consultations, in turn, are carried out to justify the Examinations and ROM/Muscle Tests and to provide a false basis for the EDX Tests. See id. The EDX Tests then are used to reinforce the purported "necessity" for additional ROM/Muscle Tests. See id.

As alleged, each of the Defendants is a necessary part of, and critical to the success of, the fraudulent scheme. See id. at ¶42. For example, the Examinations and referrals made by the Clinic Defendants to the EDX Testing Defendants are a necessary part of, and critical to the success of the fraudulent scheme because, without the referrals, the EDX Testing Defendants would not be in a position to perform the Consultations and EDX Tests, which in turn permit the Clinic Defendants to bill Allstate and collect payment for the Fraudulent Services. See id.

In addition, both categories of Defendants benefit from each other's participation in the scheme. On the one hand, the Clinic Defendants benefit from the scheme because: (i) they bill and collect money from Allstate and other insurers for the fraudulent charges associated with the Consultations and EDX Tests; and (ii) the EDX Test results are used to justify the laundry list of additional medical services that are performed on Insureds for which the Clinic Defendants also bill and collect money from Allstate. See id. at ¶43. On the other hand, the EDX Testing Defendants receive payment from the Clinic Defendants and financially enrich themselves as a result of performing the Fraudulent Consultations and EDX Tests. See id.

5

C.    **The Defendants' Efforts to Conceal Their Fraud**

       To induce Allstate to promptly pay the charges for the Fraudulent Services, the Defendants have gone to great lengths to systematically conceal their fraud. For instance, they knowingly have misrepresented and concealed facts related to the employment status of the EDX Testing Defendants in order to prevent Allstate from discovering that the physicians are not employed by the PC Defendants, and that the PC Defendants therefore are not entitled to bill for or receive no-fault benefits for services provided by the physicians. See id. at ¶116. For example, the Defendants deliberately and systematically have submitted billing to Allstate which claims that the EDX Testing Defendants are employees of the respective PC Defendants, when in fact they are independent contractors, or which deliberately omits any reference to the fact that the EDX Testing Defendants are independent contractors. See, e.g., id. at ¶¶49, 116. In addition, the Defendants knowingly have misrepresented and concealed facts in order to prevent Allstate from discovering that the Fraudulent Services were medically unnecessary and performed pursuant to a fraudulent pre-determined protocol designed to maximize the charges that could be submitted. See, e.g., id. at ¶¶54-78, and passim. Likewise, the Defendants knowingly have misrepresented and concealed facts in order to prevent Allstate from discovering that the Fraudulent Services often never were provided at all. See, e.g., id. at ¶¶88-112, and passim. For instance, the Defendants routinely created false NCV Test reports from pre-existing medical records to give the appearance that the NCV Tests were performed, when in fact they never were performed at all. Id. Moreover, the Defendants routinely arrived at false, pre-determined "diagnoses" in order to create a false appearance of necessity for the EDX Tests, the ROM/Muscle Tests, and the other Fraudulent Services. Id.

       Furthermore, the Defendants in many cases have created multiple professional corporations with different tax identification numbers in order to reduce the amount of billing submitted through any single professional corporation, and thereby prevent Allstate or law enforcement from

identifying the pattern of fraudulent charges submitted through any one entity. <u>Id.</u> at ¶116, and <u>passim</u>.

**D.**     **The Causes of Action**

The Complaint alleges five causes of action against each of the seven sets of Clinic Defendants and associated EDX Testing Defendants: (i) substantive RICO (18 U.S.C. § 1962(c)); (ii) RICO conspiracy (18 U.S.C. § 1962(d)); (iii) common law fraud; (iv) unjust enrichment; and (v) (against the associated EDX Testing Defendants only) aiding and abetting fraud. The remaining cause of action is for a declaratory judgment against the PC Defendants. Specifically, Plaintiff seeks a declaration that: (i) the PC Defendants have no right to receive payment for any pending bills submitted to Allstate because the Fraudulent Services were provided by independent contractors; and (ii) the PC Defendants have no right to receive payment for any pending bills submitted to Allstate because the Fraudulent Services were not medically necessary or were not provided at all.

The Moving Defendants seek to dismiss Plaintiff's civil RICO and RICO conspiracy claims under Fed. R. Civ. P. 12(b) and 9(b).[4] As discussed below, each of the motions should be denied.

<strong><u>ARGUMENT</u></strong>

**I.**     **PLAINTIFF'S RICO CLAIMS ARE SUFFICIENTLY PLEADED**

**A.**     **The Standards on a Motion to Dismiss Under Rule 12(b)(6)**

Pursuant to Rule 12(b)(6), dismissal is appropriate if the plaintiff has failed to offer sufficient factual allegations to make the asserted claim plausible on its face. <u>Sharkey v. Quarantillo</u>, 541 F.3d 75, 92 (2d Cir. 2008); <u>see also</u> <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157-58 (2d Cir. 2007). Thus, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). The "plausibility" standard does not, however, mandate a universal standard of heightened

---

[4] Because the Moving Defendants' arguments overlap, any argument made by one will be treated as if made by all, except where otherwise noted.

7

fact pleading. Petrucelli v. Hasty, 605 F. Supp. 2d 410, 417 (E.D.N.Y. 2009); see also Daniel v. Long Is. Housing Partnership, Inc., 2009 U.S. Dist. LEXIS 20251, at *12 (E.D.N.Y., March 13, 2009)("The Court does not, therefore, require 'heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face'")(internal citation omitted). More recently, in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, noting that "[d]etermining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that  requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

A trial court considering a Rule 12(b)(6) motion must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chemical Co., 517 F.3d 104 (2d Cir. 2008) (citation omitted); see also Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).  A court may also consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference ... and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit" on a motion to dismiss.  See ATSI Communications. Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)(internal citation omitted).

"The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985) (internal quotations and citations omitted); Globaltex Group, Ltd. v. Trends Sportswear, Ltd., 2009 U.S. Dist. LEXIS 38302, at *9 (E.D.N.Y., May 6, 2009)("In reviewing a Rule 12(b)(6) motion, the task of the court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'")(internal citation omitted).

8

**B.     The RICO Statute**

To state a viable claim for civil RICO, Allstate must satisfy seven elements: (i) that the Defendants; (ii) through the commission of two or more acts; (iii) constituting a pattern; (iv) of racketeering activity; (v) directly or indirectly conduct or participate in; (vi) an enterprise; (vii) the activities of which affect interstate or foreign commerce. See 18 U.S.C. § 1962(c); Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983); The Jordan (Bermuda) Investment Co. Ltd. v. Hunter Green Investments Ltd., 154 F. Supp. 2d 682, 690 (S.D.N.Y. 2001).

In addition, Allstate must allege that it was "injured in its business or property by reason of the conduct constituting the RICO violation." See 18 U.S.C. § 1964(c); Moss, 719 F.2d at 17; see also Burrell v. State Farm and Cas. Co., 226 F. Supp. 2d 427, 443 (S.D.N.Y. 2002).[5]

The Moving Defendants maintain that Allstate has failed to plead a RICO "enterprise." Specifically, they contend that Allstate has not alleged facts demonstrating the existence of an "enterprise" that is: (i) separate and distinct from the alleged pattern of racketeering activity, i.e., the submission of fraudulent bills to Allstate; or (ii) distinct from the persons who allegedly committed the predicate acts, in this case the PC Defendants, by and through their physician owners, who, according to Defendants, are one and the same. The Moving Defendants further contend that Allstate has not pleaded its RICO claims with the specificity required under Fed. R. Civ. P. 9(b). As demonstrated below, the Moving Defendants are wrong.

**C.     The Enterprise Requirement**

Under section 1962(c), "the RICO 'person' must conduct the affairs of the RICO 'enterprise' through a pattern of racketeering activity." Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir 1994); State Farm Mut. Auto. Ins. Co. v. Cohan, 2009 U.S. Dist.

---

[5] There is no question that Allstate can satisfy the RICO injury requirement, based upon the fact that it has paid more than $1,780,000.00 pursuant to the fraudulent billing submitted by the Defendants.

LEXIS 125653, at *19 (E.D.N.Y. Dec. 30, 2009).  In this regard, the "person" and the "enterprise" must be distinct and alleged as distinct entities in the pleadings.  Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001); see Allstate Ins. Co. v. Valley Physical Medicine & Rehabilitation, P.C., 2009 U.S. Dist. LEXIS 91291, at *16 (E.D.N.Y., September 30, 2009).

"Enterprise" is defined by 18 U.S.C. § 1961(4) to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4)(emphasis added).  A RICO "enterprise" therefore may be comprised of a "group of persons associated together for a common purpose of engaging in a course of conduct," the existence of which is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."  Boyle v. United States, __ U.S. __, 129 S. Ct. 2237, 2243 (2009); quoting United States v. Turkette, 452 U.S. 576, 583 (1981); see also United States v. Castro, 669 F. Supp. 2d 288, 290-91 (E.D.N.Y. 2009).

"The Second Circuit has construed 'enterprise' liberally, noting that RICO's language and the history suggest that Congress sought to define the term as broadly as possible .... For an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes ...."  AIU Ins. Co. v. Olmecs Med. Supply, Inc., 2005 U.S. Dist. LEXIS 29666, at *19-20 (E.D.N.Y. Feb. 22, 2005). In Boyle v. United States, supra, the Supreme Court clarified that an association-in-fact enterprise need only have a "structure" exhibiting three features: (i) a purpose; (ii) relationships among those associated with the enterprise; and (iii) sufficient longevity to permit the associates to pursue the purpose.  129 S. Ct. at 2245-46; see also Cohan, 2009 U.S. Dist. LEXIS 125653, at *21.

"This test 'establishes a low threshold for pleading [an association-in-fact] enterprise.'" Automated Teller Mach. Advantage LLC v. Moore, 2009 U.S. Dist. LEXIS 68724, at *19 (S.D.N.Y. Aug. 6, 2009) quoting McGee v. State Farm Mut. Auto. Ins. Co., 2009 U.S. Dist. LEXIS 60229, at *14 n.7 (E.D.N.Y. July 10, 2009). Indeed, in Boyle, the Supreme Court specifically rejected a

10

petitioner's contention that an association-in-fact enterprise was required to exhibit structural attributes such as a "hierarchy", "role differentiation", a "unique modus operandi", a "chain of command", "professionalism and sophistication of organization", "membership dues, rules and regulations", an "internal discipline mechanism", "regular meetings regarding enterprise affairs", or an "enterprise name". 129 S. Ct. at 2245. Rather, the Court noted that "[w]e see no basis in the language of RICO for the structural requirements that petitioner asks us to recognize ... an association-in-fact enterprise is simply a continuing unit that functions with a common purpose." Id.

Furthermore, in pleading the element of "enterprise" under RICO, a Plaintiff need only satisfy the notice requirements of Fed. R. Civ. P. 8(a). State Farm Mut. Auto. Ins. Co. v. Grafman, 2007 U.S. Dist. LEXIS 96751, at *30 (E.D.N.Y. May 22, 2007); State Farm Mut. Auto. Ins. Co. v. Kalika, 2006 U.S. Dist. LEXIS 97454, at *44 (E.D.N.Y. Mar. 16, 2006); AIU Ins. Co., supra, 2005 U.S. Dist. LEXIS 29666, at *20.

**D.      The Complaint Sufficiently Pleads an Association-in-Fact Enterprise**

The Berardi Defendants – relying on selected excerpts from a handful of pre-Boyle decisions – contend that Allstate's allegations concerning the "hierarchy, organization, and activities" of the enterprise are conclusory, and that Allstate has failed to plead plausible facts with respect to "how the members joined together as a group to achieve these purposes". See Berardi Defendants' Memorandum of Law ("Berardi Memo") at pp. 10-11. The legal standard that the Berardi Defendants advocate is wrong. Boyle requires only that a plaintiff plead "a group of entities associated together for a common purpose of engaging in a course of conduct." Id. 129 S. Ct. at 2244; see also Cohan, 2009 U.S. Dist. LEXIS 12563, at *20-21. Contrary to the Berardi Defendants' assertion, pleading an "hierarchical structure" or a "chain of command" is not necessary. Boyle, 129 S.Ct. at 2245; United States v. Burden, 600 F.3d 204, 215 (2d Cir. 2010)(same); see also Automated

11

Teller Mach. Advantage LLC, 2009 U.S. Dist. LEXIS 68724, at *19; McGee, 2009 U.S. Dist. LEXIS 60229, at *14 n.7.

As evidence of the alleged pleading defects, the Berardi Defendants point exclusively to paragraph 195 of the Complaint, which they claim is patently deficient. See Berardi Memo at p. 11. This is disingenuous. Paragraphs 193 to 198, which incorporate by reference all prior paragraphs of the Complaint, set forth numerous facts demonstrating how the Berardi Defendants joined together with the other members of the Berardi Fraudulent Testing Enterprise to achieve their fraudulent purposes. See Complaint at ¶¶4-5, 10, 20-22, 28-30, and 40-114.[6] More specifically, the Complaint alleges that Dr. Berardi is the physician who incorporated Arco, Neomy and Kath, and who purports to be their sole shareholder, director and officer. Dr. Berardi also purports to perform and issue reports based on many of the Fraudulent Services, including the Examinations and ROM/Muscle Tests. Arco, Neomy and Kath are independent entities – with different names and tax identification numbers – that were created as vehicles to achieve a common purpose – namely, to facilitate the submission of fraudulent charges to Allstate. Dr. Kim, Dr. Tsirlin and Dr. Morr falsely purport to be employees of Arco, Neomy, and Kath; purport to perform the Consultations and EDX Tests; and issue false reports relating to the Consultations and EDX Tests to support the fraudulent charges, in order to permit Arco, Neomy and Kath to bill for and collect no-fault benefits to which they are not entitled. See Complaint at ¶195.

Furthermore, the Complaint alleges that the Berardi Fraudulent Testing Enterprise carried out its activities for more than three (3) years (between 2005 and 2008) - a sufficient period of time to satisfy the longevity requirement. See, e.g., Complaint at ¶¶6, 198, Exhibit 3; see also ¶¶128, 303,

---

[6] The same holds true for the Etienne Fraudulent Testing Enterprise, see Complaint at ¶¶4-5, 8, 15-17, 28-29, 40-114, 125, and the Nagourney Fraudulent Testing Enterprise. See Complaint at ¶¶ 4-5, 13, 25-26, 30, 40-114, 300.

Exhibits 1 and 6; <u>Automated Teller Mach. Advantage LLC</u>, <u>supra</u> (two year, two month period sufficient).

In sum, the Complaint sufficiently alleges that members of the Berardi Fraudulent Testing Enterprise functioned as a continuing unit for the purpose of engaging in a course of fraudulent conduct. The allegations not only satisfy the <u>Boyle</u> standard, it also meets the standards employed by this Court in cases of this type well before <u>Boyle</u> was even decided. <u>See</u> <u>State Farm Mut. Auto. Ins. Co. v. CPT Medical Servcs., P.C.</u>, 2008 U.S. Dist. LEXIS 71156, at *35-36 (E.D.N.Y. Sept. 5, 2008); <u>AIU Ins. Co.</u>, 2005 U.S. Dist. LEXIS 29666, at *24; <u>see also</u> <u>Liberty Mut. Ins. Co. v. Blessinger</u>, 2007 U.S. Dist. LEXIS 21781 (E.D.N.Y. Mar. 27, 2007)("the details in the complaint regarding how the various enterprises operated and the roles played by each member sufficiently allege that the defendants were associated-in-fact").

### E.        The Complaint Meets the Distinctiveness Requirements

#### 1.        The Enterprise and the RICO Persons Are Distinct

As indicated above, the RICO "person" and "enterprise" must be distinct. <u>Riverwoods</u>, 30 F.3d at 344. Therefore, a corporate entity, standing alone, may not be both the RICO person and the RICO enterprise under section 1962(c). <u>See</u> <u>Riverwoods</u>, 30 F.3d at 344. However – and the Moving Defendants elide this point – "a defendant may be [both] a RICO person and one of a number of members of the RICO enterprise." <u>Id</u>. For instance, in <u>Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C.</u>, 2009 U.S. Dist. LEXIS 91291 at * 17 - * 20 (E.D.N.Y. Sept. 30, 2009), the Court upheld RICO claims against association-in-fact enterprises comprised of corporate entities and their principals where both the corporate entities and their principals also were alleged as individual RICO persons. <u>See also</u> <u>United States v. Philip Morris USA, Inc.</u>, 566 F.3d 1095, 1112 (D.C. Cir. 2009)("Many other decisions have ... upheld RICO allegations involving corporate defendants who were also members of the association-in-fact enterprise")(collecting cases); <u>G-I Holdings, Inc. v. Baron & Budd</u>, 238 F. Supp. 2d 521, 547 (S.D.N.Y. 2002)(distinctiveness requirement met where the

13

"persons" were partners of a law firm and the enterprise consisted of those persons, the law firm and other entities who made up an association in fact enterprise).

Even so, the Nagourney Defendants, in particular, contend that the Complaint fails to sufficiently allege that the PC Defendants are distinct from the association-in-fact enterprises. See Nagourney Defendants' Memorandum of Law ("Nagourney Memo") at p. 16. However, the Complaint clearly alleges that the various association-in-fact enterprises were comprised of something more than just the PC Defendants and their owners/employees, and functioned as units to become something more than the sum of their respective parts. First and foremost, the Complaint alleges that the EDX Testing Defendants were component members in all of the various association-in-fact enterprises, and that the EDX Testing Defendants were non-exclusive independent contractors, not agents of the respective PC Defendants. Considering these allegations, the Nagourney Defendants cannot colorably argue that there is no distinction between the PC Defendants and the association-in-fact enterprises. See, e.g., Conte v. Newsday, Inc., 2010 U.S. Dist. LEXIS 28502 at * 17 - * 19 n.4 (E.D.N.Y. March 25, 2010)(rejecting argument that there was no distinction between a corporate RICO "person" and a RICO "enterprise" composed of the corporate RICO person, its employees, and independent contractors associated with the corporate RICO person); see also Levine v. First Am. Title Ins. Co., 2010 U.S. Dist. LEXIS 2876 at * 30 - * 33 (E.D. Pa. January 14, 2010)(denying motion to dismiss where alleged RICO person was defendant corporation and alleged RICO enterprise consisted of that corporation and "nonexclusive agents" who were "independent and distinct entities and individuals".

Furthermore, the Complaint alleges that the association-in-fact enterprises (not the PC Defendants, themselves) collectively recruited professionals and non-professionals to perform tasks beyond the acts of mail fraud, entered into billing and collections agreements, negotiated lease agreements, maintained bookkeeping and accounting functions, collectively colluded to conceal the fraudulent scheme, etc.. See Complaint at ¶¶ 126, 196, 301, and passim. The Complaint further

14

alleges that the schemes in which the association-in-fact enterprises engaged would be beyond the means of any of their individual participants – including the respective PC Defendants – acting singly or without the aid of the others. Id. at ¶¶125, 195, 300, and passim. Again, in light of these allegations there is no real basis for the Nagourney Defendants to contend that the Complaint pleads no distinction between the PC Defendants and the various association-in-fact enterprises.

Plaintiff has satisfied the minimum "person" and "enterprise" distinctiveness requirement because the various combinations of the PC Defendants, their purported owners, and the EDX Testing Defendants constitute separate enterprises that are separate and distinct from the individual PC Defendants, themselves. The enterprises are not simply the PC Defendants by other names.

> 2. **There Is No Requirement That the Enterprise Be Ascertainably Distinct From the Pattern Of Racketeering Activity**

The Moving Defendants spend considerable time contending that the Complaint insufficiently alleges the existence of an enterprise separate and apart from the racketeering activity. See Etienne Defendants' Memorandum of Law ("Etienne Memo") at pp. 3-14, Nagourney Memo at pp. 14-15. According to the Moving Defendants, Allstate is required to allege facts demonstrating that the enterprise is ascertainably distinct from the racketeering activity in which it engages, i.e., the submission of fraudulent bills to Allstate. Again, the Moving Defendants are wrong.

The Second Circuit has construed the enterprise element liberally, and has held that an enterprise is properly pleaded even if the pleading reveals that the group exists solely for the commission of the fraudulent acts alleged in the complaint. See Pavlov v. Bank of N.Y. Co., 25 Fed. Appx. 70 (2d Cir. 2002); United States v. Mazzei, 700 F.2d 85, 89 (2d Cir. 1983); Purchase Real Estate Group, Inc. v. Jones, 2010 U.S. Dist. LEXIS 43201, at *19 (S.D.N.Y. Apr. 30, 2010); SKS Constructors, Inc. v. Drinkwine, 458 F. Supp. 2d 68, 77 (E.D.N.Y. 2006). "The enterprise need not necessarily have a continuity extending beyond the performance of the pattern of racketeering acts alleged, or a structural hierarchy, so long as it is in fact an enterprise as defined in the statute."

Pavlov, 25 Fed. Appx. at 71.  As the Mazzei Court noted, "there is no language in the legislative history to indicate that the alleged enterprise must engage in activities separate and distinct from the [illicit activity] to come within the purview of RICO."  700 F.2d at 89; see also United States v. Errico, 635 F.2d 152 (2d Cir. 1980)(court held that network of jockeys and bettors, joined together for the "single, illegal purpose" of betting on "fixed" horse races, constituted an "enterprise" for purposes of RICO).

Although, as the Moving Defendants note, some courts have held that the enterprise must be distinct from the racketeering activity in which it engages, any lingering uncertainty regarding this purported requirement was resolved by the Supreme Court in its 2009 decision in United States v. Boyle, supra.  In Boyle, the Supreme Court abrogated any requirement that the enterprise must be "ascertainably distinct" from the pattern of racketeering activity.  See Boyle, 129 S. Ct. at 2244-45; see also Elsevier, Inc. v. W.H.P.R., Inc., 2010 U.S. Dist. LEXIS 16104, at *18-19 (S.D.N.Y. Feb. 19, 2010)("An association of individuals can be an enterprise if it is formed for the purpose of engaging in any type of illicit activity … and it need not have an existence apart from the predicate acts committed by its employees and/or associates"); Cohan, 2009 U.S. Dist. LEXIS 125653, at *20 (noting that the distinctiveness requirement was seemingly abrogated by Boyle).  The Boyle Court noted that the phrase "beyond that inherent in the pattern of racketeering activity," is correctly interpreted to mean that the enterprise's existence is a separate "element" that must be proved, but not that such existence may never be inferred from the evidence showing that the associates engaged in a pattern of racketeering activity. Boyle, 129 S. Ct. at 2245.

The Boyle Court thus declined to overturn the defendant's conviction on the ground that the trial judge failed to charge the jury that an association-in-fact enterprise had to have an ascertainable structure beyond that inherent in the pattern of racketeering activity in which it engaged.  As the Court noted, "the trial judge did not err in instructing the jury that 'the existence of an association-in-fact is oftentimes more readily proven by what it does, rather than by abstract analysis of its

16

structure.'  This instruction properly conveyed the point we made in <u>Turkette</u> that proof of a pattern of racketeering activity may be sufficient in a particular case to permit a jury to infer the existence of an association-in-fact enterprise." <u>Boyle</u>, 129 S. Ct. at 2247.

Hence, an "enterprise" is a separate element that must be established as part of the RICO offense, but it need not be ascertainably distinct from the pattern of racketeering activity.[7]  While the RICO enterprise is an "entity" comprised of individuals or entities operating as a unit toward some common purpose, the "pattern of racketeering activity" is a "series of criminal acts defined by the statute." <u>United States v. Burden</u>, 2010 U.S. App. LEXIS 6594, at *17 (2d Cir. Mar. 31, 2010).  Both are conceptually distinct elements of the RICO offense that must be alleged separately and proven – but the proof required to establish each may be the same. <u>See</u> <u>Mazzei</u>, 700 F.2d at 89. As such, it is not necessary to show that the enterprise engaged in activities other than those charged as predicate acts – just that it manifested the characteristics of structure, continuity and common purpose. <u>See</u> <u>Boyle</u>, 129 S. Ct. 2237; <u>Mazzei</u>, 700 F.2d 85; <u>see</u> <u>also</u> <u>United States v. Indelicato</u>, 865 F.2d 1370, 1375 (2d Cir. 1989)(the pattern and the enterprise need not be totally distinct and independent, so long as the proof offered is sufficient to satisfy both elements).

Nevertheless, even if distinctiveness were required (and <u>Boyle</u> holds it is not), the Complaint sufficiently pleads the existence of a RICO enterprise that is distinct from the pattern of racketeering activity.  The Complaint sets forth the numerous categories of activities in which the enterprise engaged demonstrating an existence separate and apart from the pattern of racketeering activity – to wit, the acts of mail fraud.  For instance, Allstate has alleged that the enterprise: (i) recruits professionals and non-professionals; (ii) deploys those professionals and non-professionals to perform

---

[7] Most of the cases cited by the Moving Defendants are not to the contrary, and do not support the putative distinctiveness element advanced by the Moving Defendants. <u>See</u> <u>United States v. Burden</u>, 2010 U.S. App. LEXIS 6594 (2d Cir. Mar. 31, 2010); <u>Rao v. BP Prods., N. Am., Inc.</u>, 589 F.3d 389 (7th Cir. 2009); <u>Conte v. Newsday, Inc.</u>, 2010 U.S. Dist. LEXIS 28502 (Mar. 25, 2010); <u>Fuji Photo Film U.S.A., Inc. v. McNulty</u>, 2009 U.S. Dist. LEXIS 96119 (S.D.N.Y. Oct. 14, 2009).

a wide variety of tasks beyond the acts of mail fraud; (iii) creates and maintains patient files; (iv)

negotiates and executes a wide variety of contracts; (v) maintains bookkeeping and accounting

functions; and (vi) retains lawyers.   See Complaint at ¶126 (the Etienne Fraudulent Testing

Enterprise), ¶196 (the Berardi Fraudulent Testing Enterprise), and ¶301 (the Nagourney Fraudulent

Testing Enterprise).   These activities are quite distinct from the pattern of Fraudulent Services and the

act of mailing fraudulent bills to Allstate.[8]

Based on the foregoing, Allstate sufficiently has pleaded an association-in-fact enterprise

under Rule 8, which is all that is required.   See Grafman, supra, 2007 U.S. Dist. LEXIS 96751, at

*30; AIU Ins. Co., supra, 2005 U.S. Dist. LEXIS 29666, at *20.

## F.    The Complaint Sufficiently Pleads a RICO Conspiracy

The Berardi Defendants further contend that the Complaint insufficiently pleads a RICO

conspiracy.   See Berardi Memo at p.p. 11-12. The Second Circuit recently summarized the

requirements of a RICO conspiracy as follows:

> To establish a RICO conspiracy, the government must prove that a defendant agreed to
> participate in the affairs of the enterprise through a pattern of racketeering activity.
> However, in Salinas v. United States, 522 U.S. 52, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997),
> the Supreme Court made clear that to establish this pattern, the government need not prove
> that the defendant himself agreed that he would commit two or more predicate acts. See id.
> at 64 (noting that, although the RICO statute "broadened conspiracy coverage by omitting the
> requirement of an overt act; it did not, at the same time, work the radical change of requiring
> the Government to prove [that] each conspirator agreed that he would be the one to commit
> two predicate acts"). Indeed, Salinas held that to be found guilty of RICO conspiracy, a
> defendant need only know of, and agree to, the general criminal objective of a jointly
> undertaken scheme. See id. at 63; see also United States v. Ciccone, 312 F.3d 535, 542 (2d
> Cir. 2002) (stating that "a conspirator charged with racketeering conspiracy need not commit

---

[8] While it is difficult to decipher from this inchoate section of their motion papers, the Etienne
Defendants appear to contend that: (i) notwithstanding Boyle, distinctiveness still is required between
the RICO enterprise and the pattern; and (ii) the Court should – at the pleading stage – disregard
Plaintiff's distinctiveness allegations in paragraph 126. See Etienne Memo at pp. 4-6. Leaving aside
the fact that this argument would require the Court to disregard Boyle, it improperly injects a
question of proof into a motion addressed to the pleadings, before Plaintiff has had the opportunity to
complete discovery. Without conceding that the argument is proper on a motion to dismiss, or valid
in light of Boyle, Plaintiff respectfully submits that the distinctiveness allegations in paragraph 126
are hardly so implausible as to warrant dismissal at this stage.

or even agree to commit the predicate acts . . . to be found guilty of the racketeering conspiracy, for it suffices that he adopt [] the goal of furthering or facilitating the criminal endeavor" (internal citations and quotations marks omitted)).

It is well-settled that a conspirator need not be fully informed about his co-conspirators' specific criminal acts provided that he agreed to participate in the broader criminal conspiracy and the acts evincing participation were not outside of the scope of the illegal agreement. "A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other." Salinas, 522 U.S. at 63-64 (internal citation omitted)
. . . .

United States v. Yanotti, 541 F.3d 112, 121-22 (2d Cir. 2008).

Measured against the above standard, the allegations of conspiracy in the Complaint are sufficient to withstand the Moving Defendants' motions to dismiss. See Valley Phys. Medicine, supra, 2009 U.S. Dist. LEXIS 91291, at * 21- * 22; CPT Medical Servcs., supra, 2008 U.S. Dist. LEXIS 71156, at * 47- * 48. Allstate not only has alleged that the Defendants each agreed to participate in the respective schemes, but that they had knowledge of each co-conspirator's role in committing – or causing to be committed – numerous predicate acts of mail fraud, i.e., submitting fraudulent bills to Allstate. See, e.g., Complaint at ¶¶5, 40-43, 78, 86, 116, 134-35, 204-05, 309-10. Moreover, the details of each co-conspirator's role in submitting the fraudulent bills to Allstate, or causing them to be submitted, are painstakingly alleged throughout the Complaint.

### G.   The Complaint Satisfies Rule 9(b)'s Specificity Requirements

Finally, the Etienne Defendants contend that Plaintiff has not pleaded its RICO claims with the specificity required by Fed. R. Civ. P. 9(b). See Etienne Memo at pp. 14-17.   The Etienne Defendants' arguments essentially boil down to the following: (i) a contention that Allstate was required to specify the time, place, speaker and content with respect to each alleged misrepresentation; (ii) a contention that Allstate was required to particularize each of the Defendants' alleged participation in the respective, interrelated schemes; and (iii) a contention that, because Allstate has alleged that the Moving Defendants committed several different types of fraud, no

particular type of fraud is alleged with the requisite specificity. Id. Essentially, the Etienne Defendants attempt to advance highly generalized rules of RICO pleading, while ignoring the more specific precedent that has been developed by this and other Courts within the Second Circuit when dealing with large-scale fraudulent no-fault schemes. Then, they argue that Allstate has not met the more generalized pleading standard with respect to Rule 9(b), and that the RICO claims therefore must be dismissed. Once again, the Moving Defendants are wrong.

As a threshold matter, in complex civil RICO actions involving multiple defendants, Rule 9(b) does not require that the "temporal or geographic particulars of each mailing made in furtherance of the fraudulent scheme be stated with particularity," but only that the "Plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme." AIU Ins. Co., supra, 2005 U.S. Dist. LEXIS 29666, at * 34; see also Grafman, supra, 655 F. Supp. 2d at 227; Kalika, supra, 2006 U.S. Dist. LEXIS 97454, at * 32.

Furthermore where, as in the present case, the nature and mechanics of the underlying scheme are sufficiently detailed, a plaintiff need not specify the content of each individual mail communication. CPT Med. Servs., P.C., supra at * 40; Giuliano v. Everything Yogurt, 819 F. Supp. 240, 244 (E.D.N.Y. 1993).

In this context Allstate has attached, as Exhibits 1, 3, and 6 to the Complaint, charts that provide a representative sampling of the Moving Defendants' fraudulent mailings. This Court consistently has held that similar pleadings in analogous actions meet the particularity requirements of Rule 9(b). See, e.g., Halima, supra at * 17 - * 20; CPT Med. Servs., et al., supra at * 39 - * 41; Liguori, M.D., supra, 589 F. Supp. 2d at 236-238; Olmecs Medical Supply, supra at * 29 - * 43.

In addition, Allstate plainly and unambiguously has identified those responsible for the misrepresentations – namely, the Clinic Defendants and EDX Testing Defendants associated with each individual enterprise. See, e.g. Complaint at ¶¶40-43, 125, 128, 195, 198, 300, 303, and passim.

20

Indeed, the Complaint sets forth – in considerable detail – each of the Moving Defendants' roles in the respective fraudulent schemes. See id. at ¶¶40-114. While it is difficult to discern the basis for the Etienne Defendants' claim that Allstate has failed to particularize their participation in the respective schemes, they appear to claim that Allstate was required to plead which member of the Etienne Fraudulent Testing Enterprise actually dropped each of the fraudulent bills into the mailbox. This is not the standard.

For instance, in Halima, certain non-physicians (the "Palter Defendants") who secretly owned and controlled a professional medical corporation in conjunction with other unlicensed individuals and entities (the "Management Defendants"), argued that Allstate – in pleading a civil RICO action predicated on mail fraud – "simply ignore th[e] requirement of specify[ing] each defendant's alleged participation in the fraud." Id. at *18 - *19. Much like the Etienne Defendants in the present case, the Palter Defendants argued that Allstate merely "grouped the Palter Defendants with other Management Defendants and, thus, fail[ed] to particularize the specific role and acts of the Palter Defendants." Id. The Court, however, held that:

> Defendants' claims are without merit. Plaintiffs have alleged that the Palter Defendants, in concert with Dr. Halima, the Prescribing Physicians, and other Management Defendants submitted several thousand fraudulent claims by mail for medically unnecessary tests and services over the course of several years to take advantage of New York's No-Fault Laws. ... In addition, Plaintiffs have presented a sample of 916 allegedly fraudulent claims submitted by the Palter Defendants to Plaintiffs. These allegations sufficiently set forth the role of the Palter Defendants and the acts of fraud they are alleged to have committed.

Id.; see also Grafman, supra at * 29 - * 34 (rejecting similar argument that State Farm failed to allege with specificity how certain defendants participated in the RICO enterprise); Kalika, supra at * 47 - * 49 (rejecting similar argument that "broad based" claims failed to "adequately allege how the individual defendants associated themselves with the particular predicate acts").

In the present case, Allstate has alleged that each discrete group of Moving Defendants acted in concert with one another to submit fraudulent billing by mail seeking reimbursement on claims that were unreimburseable. Likewise, Allstate has included – as Exhibits 1, 3, and 6 to the Complaint

21

-- charts listing the fraudulent billing that was submitted by each group of Moving Defendants. Accordingly, the Etienne Defendants' contention that Allstate has not sufficiently particularized their participation in the respective fraudulent schemes is meritless.

Finally, the Etienne Defendants profess to be confused by the alleged misrepresentations regarding the EDX Testing Defendants' employment status. See Etienne Memo at pp. 15-16. Specifically, they contend that because Allstate alleges that the billing they submitted either misrepresents the EDX Testing Defendants' employment status, or deliberately omits any mention of their employment status, they cannot tell what sort of fraud is being alleged. Along similar lines, the Etienne Defendants argue that -- because Allstate has alleged that the NCVs were duplicative, unbundled, and in many cases not performed at all -- no one of these allegations has been pleaded with the requisite specificity.

The sum and substance of this argument is that -- because Allstate has alleged that the Moving Defendants have committed several different types of fraud against it -- no particular type of fraud is alleged with the requisite specificity. This circular reasoning is unsupported by any authority or the Complaint itself. The Complaint pleads specific detailed facts describing the fraudulent scheme, the role of each of the Defendants in the fraudulent scheme and the elements of fraud with respect to each defendant. See Complaint at ¶¶40-112. Additionally, Allstate has compiled and annexed -- as Exhibits 1, 3 and 6 to the Complaint -- a chart that identifies the fraudulent bills mailed to Allstate by each of the Moving Defendants. These allegations are more than adequate to meet the particularity requirements of Rule 9(b). See Cohan, 2009 U.S. Dist. LEXIS 125653; Valley Phys. Medicine, 2009 U.S. Dist. LEXIS 91291; Grafman, 655 F. Supp. 2d 212; Halima, 2009 U.S. Dist. LEXIS 22443; State Farm Mut. Auto. Ins. Co. v. Liguori, 589 F. Supp. 2d 221 (E.D.N.Y. 2008); CPT Med. Servs., 2008 U.S. Dist. LEXIS 71156; Kalika, 2006 U.S. Dist. LEXIS 97454; AIU Ins. Co., 2005 U.S. Dist. LEXIS 29666.

Furthermore, Allstate has sufficiently pleaded scienter.  In State Farm Mut. Auto. Ins. Co.

v. CPT Medical Servcs., P.C., supra, the court noted:

> A plaintiff "must provide some minimal factual basis for conclusory allegations of scienter that give rise to a strong inference of fraudulent intent either by (1) alleging a motive for committing fraud and a clear opportunity for doing so, or (2) where the motive is not apparent, by identifying circumstances indicating conscious behavior by the defendant, though the strength of the allegations must be correspondingly greater. ... Here, the motive shared by all defendants was to induce State Farm to pay claims that were otherwise not reimbursable, and for their efforts they received payments, either directly from or indirectly as kickbacks disguised as "management fees."

2008 U.S. Dist. LEXIS 71156, at *40-41 (internal quotations and citations omitted); see also Liguori,

589 F. Supp. 2d at 238 (strong inference of fraudulent intent demonstrated by allegations showing

that: (i) defendants had both motive and opportunity to commit fraud; or (ii) facts indicating strong

circumstantial evidence of conscious misbehavior or recklessness).  Allstate's Complaint satisfies

either test for pleading scienter.  Allstate has pleaded specific facts demonstrating that the Moving

Defendants had both a motive to commit fraud and a clear opportunity to do so.  See Complaint at

¶¶42-44.  Indeed, the Complaint specifically alleges that the Moving Defendants not only had an

opportunity to commit fraud – they actually did so producing unlawful gains in excess of $1.2

million.  See id. at ¶¶128, 131, 198, 201, 303, 306.  Additionally, the Complaint alleges specific facts

demonstrating a strong circumstantial evidence of conscious misbehavior and recklessness.  See, e.g.,

¶¶5, 73-74, 78, 86, 116, 139-41, 209-211, 314-16.

In addition, the Complaint alleges that the Clinic Defendants and EDX Testing

Defendants submitted, or caused to be submitted, hundreds of fraudulent bills to Allstate

knowing: (i) the Fraudulent Services were ordered and performed – to the extent they were

performed at all – pursuant to fraudulent, pre-determined protocols; (ii) the billing codes used for

the Examinations and Consultations misrepresented and exaggerated the level of services

provided in order to inflate the charges submitted to Allstate; (iii) the Examinations and

Consultations systematically resulted in an order for EDX Tests, regardless of any Insured's

unique circumstances or the fact that they were medically unnecessary; (iv) the ROM/Muscle Tests were duplicative of other diagnostic tests that already had been performed during the Examinations and were conducted solely to inflate the charges submitted to Allstate; (v) the billing codes used for the ROM/Muscle Tests and EDX Tests systematically were unbundled to inflate the charges submitted to Allstate; (vi) the EDX Tests billed to Allstate frequently were not even performed, and the Clinic Defendants and the EDX Testing Defendants simply copied EDX Test results from one Insured and used them to support billing for many other Insureds; (vii) when the EDX Tests were performed, they were not performed in accordance with the minimum standards necessary to support the charges submitted to Allstate; and (viii) the PC Defendants were ineligible to bill for or collect no-fault benefits for the Consultations and EDX Tests in the first instance, inasmuch as the Consultations and EDX Tests were performed – to the extent they were performed at all – by independent contractors rather than by the PC Defendants' employees. See Complaint at ¶5. These allegations are more than sufficient to establish the Moving Defendants' conscious misbehavior and satisfy the scienter requirement.

**H.      There Is No Basis For This Court to Decline Jurisdiction**

The Etienne Defendants request that this Court decline jurisdiction and dismiss Allstate's Complaint in its entirety in the event that Allstate's RICO claims are dismissed – the rationale being that this would remove the only source of original jurisdiction for this Court. The Etienne Defendants are mistaken yet again. This Court would also have jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 because the Plaintiff and the Defendants are citizens of different states, and the amounts in controversy exceed $75,000.00. In short, there is no basis for dismissing Allstate's state law claims.

24

II.   **TO THE EXTENT THAT THE COURT FINDS A DEFECT, ALLSTATE WOULD REQUEST LEAVE TO AMEND**

Allstate believes that its' Complaint adequately alleges claims for violation of the RICO statute against the Moving Defendants. To the extent, however, that the Court finds the Complaint to be inadequate in any manner, Allstate would respectfully request leave pursuant to Fed. R. Civ. Proc. 15(a) to serve an amended complaint, as it believes that any such inadequacies would be merely issues of technical pleading rather than substantive defects in the claims. There is no legitimate basis to suggest that such an amendment would be futile or that the Moving Defendants would be prejudiced. See Oliver Schools, Inc. v. Foley, 930 F.2d 248, 253 (2d Cir.1991)("Where the possibility exists that the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course."); see also Elsevier, Inc., supra, 2010 U.S. Dist. LEXIS 16104, at *21 (granting leave to replead RICO claims to cure technical deficiencies identified by the Court in response to a motion to dismiss).

### CONCLUSION

For the reasons stated herein, the Defendants motions to dismiss should be denied in their entirety. In the event that the Court finds an inadequacy in the Complaint, Allstate should be granted leave to amend.

Dated: June 4, 2010

Respectfully submitted,

RIVKIN RADLER LLP

By: _____
       Barry I. Levy (BL 2190)
       Michael P. Versichelli (MV 2692)
       Max Gershenoff (MG 4648)
926 RXR Plaza
Uniondale, New York 11556-0926
(516) 357-3000

*Counsel for Plaintiff Allstate Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that the Memorandum Of Law On Behalf Of Plaintiff Allstate Insurance Company In Opposition To Defendants' Motions For Partial Dismissal, together with a Compendium Of Unreported Cases Cited In Plaintiff's Memorandum Of Law, was served by Federal Express Overnight delivery on June 4, 2010, upon the following persons:

Alexander Levine, Esq.
Levine & Chong, LLC
1517 Franklin Avenue, Suite 300
Mineola, New York 11501

Mark L. Furman
Hoffman Polland & Furman PLLC
220 East 42nd Street – Suite 435
New York, New York 10017

Matthew J. Conroy
Matthew J. Conroy & Associates, P.C.
350 Old Country Road – Suite 106
Garden City, New York 11530

Dated: June 4, 2010

/s/ **Barry I. Levy**
Barry I. Levy

**COVER OF HARD COPY
THAT WAS FILED WITH
THE COURT**

Docket No.:
09-CV-3582 (SLT) (RLM)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALLSTATE INSURANCE COMPANY,

Plaintiff,

-against-

VIVIANE ETIENNE, M.D., et al.

Defendants.

**COMPENDIUM OF UNREPORTED CASES CITED IN PLAINTIFF'S
MEMORANDUM OF LAW**

RIVKIN RADLER LLP
Counsel for Plaintiff
ALLSTATE INSURANCE COMPANY
926 RXR Plaza
Uniondale, New York  11556-0926
(516) 357-3000

OF COUNSEL:

Barry I. Levy, Esq.
Michael P. Versichelli, Esq.
Max Gershenoff, Esq.