# HOFFMAN POLLAND & FURMAN PLLC
Attorneys At Law
220 EAST 42nd STREET, SUITE 435
NEW YORK, NEW YORK 10017
(212) 338-0700
FAX (212) 338-0093
www.HPF-Law.com

October 21, 2010

*Plaintiff shall respond to this application by October 25, 2010.*

**Via ECF**

Honorable Roanne L. Mann
United States Magistrate-Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

SO ORDERED
/s/
Roanne L. Mann
U.S. Magistrate Judge
Dated: 10/22/10

Re: <u>Allstate Insurance Company v. Etienne et al</u>
Docket #: 1:09-cv-03582-SLT –RLM

Dear Magistrate-Judge Mann:

    I write on behalf of defendants Vivienne Etienne, M.D., V.E. Medical Care, P.C., Jamaica Dedicated Medical Care, P.C., and Viviane Etienne Medical Care, P.C. (collectively the "Etienne Defendants").

    We respectfully submit this letter to request that the Court compel the plaintiff, Allstate, to provide a full and <u>accurate</u> response to the Etienne Defendant's Interrogatory 15, which requested the most basic information necessary to enable these defendants to go forward with either litigating or resolving this action[1], to wit: basic claim information for each of the paid invoices which comprise Allstate's alleged damages.

---

[1] Interrogatory 15 and Allstate's response to it are set forth below:

**Interrogatory No. 15**

Any documents including schedules, listings, summaries, and any other compilations of data from which Plaintiffs have calculated their claimed damages of $1,780,000.

**Response:**

Objection. In addition to the General Objections, Allstate objects to this interrogatory on the basis that it seeks the production of documents rather than information within the scope of Rule 33. Allstate further objects to this interrogatory to the extent that it seeks to discover information protected by the attorney-client privilege and/or work product doctrine and seeks to discover documents and/or information that constitute material prepared in anticipation of litigation. Subject to and without waiving these objections, Allstate will produce, pursuant to Rule 33(d) a chart identifying the information responsive to this interrogatory.

Hon. Roanne L. Mann
October 21, 2010
Page -2-

On or about June 30, 2010, in response to this Interrogatory, Allstate produced an initial 682 page printout (the "Initial Damages Chart") that purportedly set forth the insurance claims comprising Allstate's claim of compensatory damages, allegedly exceeding $648,000, caused by the Etienne Defendants.

Following an initial and cursory review of the Initial Damages Chart, we requested, via email dated June 30, 2010, the raw data upon which it was based, citing concerns with accuracy, only to be advised that, inexplicably, no such raw data exists. Our client was therefore relegated to painstakingly verifying the accuracy of the information claim by claim. After a preliminary review of approximately the first 1,300 of the Initial Damages Chart's entries, it became clear that the mistakes contained therein were simply too numerous to effectively continue.

Accordingly, we advised Allstate's counsel by letter of July 13, 2010, that the Chart was riddled with, among other things, errors, duplicate entries, and included claims marked "paid," but which really reflected claims which had been arbitrated to decision, litigated to judgment or settled after the commencement of litigation or arbitration, raising, at a minimum, issues of waiver, collateral estoppel, and/or res judicata.[2] We were assured by counsel that a corrected Chart would be forthcoming shortly.

This past week, Allstate finally provided us with an updated 625 page chart (the "Revised Damages Chart") which purports to correct the numerous errors contained in the initial Chart. However, despite assurances to the contrary, the Revised Damages Chart appears also to be replete with errors, and, thus is as unreliable as the first Chart.

This time, we randomly selected an assortment of pages from the Revised Damages Chart, which again proved to be replete with errors, as follows:

(i) pages 6, 598, and 599 contain numerous entries marked as "paid" when they were, in fact, never paid by Allstate;

(ii) pages 5 and 6 contain duplicate entries for SSEP (Somatosensory Evoked Potential tests), which are even of the tests that are at issue in plaintiff's complaint;

(iii) Additionally, these same entries are plainly duplicated a can be seen from the pages, themselves, copies of which are attached hereto as Exhibit A;

---

[2] In subsequent correspondence dated July 15, 2010, plaintiff's counsel suggested that some or all of the errors referred to above were the result of purported "unbundling" of services (i.e., billing for each component of a set of services that should, instead, have been billed together as a single entry).

By letter dated July 19, 2010, we disputed plaintiff's supposition that the duplicate entry errors contained in the First Chart which had been identified thus far were the product of unbundling, and asserted instead that the duplicate entries consisted of identical references to items like electro-diagnostic testing and initial exams which were only billed once by our client, not two or three times as plaintiff asserts.

Hon. Roanne L. Mann
October 21, 2010
Page -3-

        (iv)    pages 32, 516, 544, 545, and 551 contain entries for Outcome Assessment Tests which were also never raised in plaintiff's complaint; and

        (v)    pages 1, 2, 3, 4, 37, 38, 41, 42, 54, 56, 57, 76, 570, 571, 578 include numerous entries regarding claims <u>which were in fact previously settled</u> between these same parties in underlying PIP ("Personal Injury Protection") suits. Copies of a sample settlement check and the corresponding pages of the Chart referring to that settled suit are attached hereto as Exhibit B. At a minimum, Allstate waived any right to re-litigate these claims. Why should these defendants be forced to defend their billings for these claims when Allstate already agreed to pay them in earlier litigation? Moreover, the Chart inexplicably states that the amount paid was zero, which is patently incorrect.

Our clients should not have go through each of the 625 pages to demonstrate each and every erroneous inclusion. This is the second time that plaintiff has attempted, and failed, to give us a detailed explanation of its alleged damages. In both instances, even after a cursory perusal, it is apparent that the data cannot be substantiated. Additionally, because of the inherent unreliability of the data set forth in the Revised Damages Chart, our clients are unable to reasonably identify the patient files that are actually at issue in this action.

Finally, we previously suggested a simple verification procedure for the errors described above, that plaintiff produce the checks and EOMB for the inaccurate entries we have pointed out. If plaintiff proves unable to do so, then the reasonable inference would be that plaintiff's damages calculations – which the Revised Damages Chart purports to detail – is inaccurate and should be recalculated by Allstate based upon good, verifiable data.

We respectfully request that the Court direct the plaintiff to produce an accurate and complete response to Interrogatory 15.[3] In the unlikely event that plaintiff should be unable or unwilling to do so, we reserve our right to seek appropriate remedy from the Court, including, possible preclusion and/or appropriate sanction.

The Court's attention to this matter is appreciated.

                            Respectfully submitted,

                            HOFFMAN POLLAND & FURMAN, PLLC

                            Mark L. Furman (MF 4456)

cc:    All counsel via ECF

---

[3] We recognize in making this request that there exists outstanding responses to plaintiff's interrogatories, but Allstate's inability to provide this most fundamental information is paramount.