FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ OCT 2 6 2010 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
Allstate Insurance Co.,

                Plaintiff,

— against —

Viviane Etienne, M.D., et al.,

                Defendants.
----------------------------------------------------------------X

**MEMORANDUM and ORDER**

09-CV-3582 (SLT)(RLM)

**TOWNES, United States District Judge:**

Plaintiff, Allstate Insurance, Co.'s, Complaint alleges five causes of action against each of the seven sets of Clinic Defendants[1] and associated EDX Testing Defendants: 1) substantive RICO (18 U.S.C. § 1962(c)); 2) RICO conspiracy (18 U.S.C. § 1962(d)); 3) common law fraud; 4) unjust enrichment; and 5) (against the associated EDX Testing Defendants only) aiding and abetting fraud. The remaining cause of action is for declaratory judgment against the PC Defendants under the Declaratory Judgment Act, 28 U.S.C. § 2201. Defendants were involved in the medical testing and treatment of individuals ("Insureds") who were involved in automobile accidents and were eligible for insurance coverage under Allstate's no-fault policies. Plaintiff alleges that defendants have engaged in a series of interrelated fraudulent schemes through which they submitted or caused to be submitted thousands of fraudulent charges relating to medical services. Plaintiff specifically seeks a declaration that: 1) the PC Defendants have no right to receive payment for any pending bills submitted to Allstate because the fraudulent services were performed by independent contractors; and 2) the PC Defendants have no right to receive

---

[1] See infra the "Background" section describing the defining each type of defendant.

payment for any pending bills submitted to Allstate because the fraudulent services were not medically necessary or were not actually provided.

This Memorandum and Order addresses two motions to dismiss submitted by two sets of defendants in this case: 1) the motion to dismiss plaintiff's Second and Third Causes of Action (RICO and RICO conspiracy claims) pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), and upon such finding, dismissal of plaintiff's pendent state law claims for fraud and unjust enrichment, as well as plaintiff's claim for declaratory relief, by defendants Viviane Etienne Medical Care, P.C., V.E. Medical Care, P.C., Jamaica Dedicated Medical Care, P.C. and V.E. Medical Care, P.C. ("the Etienne Defendants"); and 2) the motion to dismiss plaintiff's Twelfth and Thirteenth causes of action (RICO and RICO conspiracy claims) pursuant to Fed. R. Civ. P. 12(b)(6) by defendants Richard Dominick Berardi, Jr., D.O., Arco Medical NY, P.C. and Neomy Medical, P.C. ("the Berardi Defendants"). For the reasons set forth below, the motions to dismiss of the Etienne Defendants and the Berardi Defendants are denied in their entirety.

## *Background*

This "Background" section is drawn entirely from the allegations in the Complaint and the exhibits attached thereto, the truth of which is assumed for purposes of this motion to dismiss.

Plaintiff alleges that defendants submitted or caused to be submitted, thousands of fraudulent charges relating to initial examinations (the "Examinations"), digital range of motion muscle tests (the "ROM/Muscle Tests"), neurological consultations (the "Consultations") and electrodiagnostic tests (the "EDX Tests") (collectively the "Fraudulent Services"). *See* Complaint at ¶1. Through these fraudulent charges, the defendants stole more than $1,780,000

2

from Allstate. *Id.* The Fraudulent Services were purportedly rendered for diagnostic purposes to individuals who were involved in automobile accidents and were eligible for insurance coverage under Allstate's no fault insurance policies. *Id.*

The defendants in this action fall into three general categories. The first set is comprised of Vivienne Etienne Medical Care, P.C., V.E. Medical Care, P.C., Jamaica Dedicated Medical Care, P.C., Sebastian Medical P.C., Acute Care Medical, P.C., Arco Medical NY, P.C., Neomy Medical, P.C., Kath Medical, P.C., Jamaica Medical Plaza, P.C., Jamhil Mecial, P.C., Amethyst Medical., P.C., Medical Polis, P.C., and S&R Medical, P.C. (Collectively the "PC Defendants") *See id.* at ¶4.

The second set of defendants is comprised of the physicians who purport to own one or more of the PC Defendants. *See id.* at ¶¶2, 4. These defendants conduct most of the fraudulent Examinations and ROM/Muscle Tests. *See id.* at ¶40. These defendants include Viviane Etienne, M.D., Jason Shevetz, M.D., Richard Dominick Berardi, Jr., D.O., Billy Nabil Geris, M.D., Serge Delaleu, M.D., Lee Craig Nagourney, M.D., Nikolai Lagoduke, M.D., and Yvette Davidov, D.O. (The "Purported Owner Defendants")(the PC Defendants and the Purported Owner Defendants collectively are referred to as the "Clinic Defendants").

The third set of defendants is comprised of physicians who are associated with the PC Defendants as independent contractors, and who purport to carry out the Consultations and EDX Tests on behalf of the PC Defendants. *See id.* at ¶¶4, 41. These Defendants are Choong Kwon Kim, M.D., Maggie Morr, M.D., and Marat Tsirlin, M.D. (collectively the "EDX Testing Defendants").

3

When an Insured visits a PC Defendant's facilities, he receives an initial Examination which is charged to Allstate separate of other Fraudulent Services and coded under particular billing codes. *See id.* at ¶¶56, 57. These codes, according to the applicable fee schedule, require that the patient present a problem of moderate-to-high severity. *See id.* at ¶58. These codes also typically represent that the physicians spent 60-80 minutes face-to-face with the patient. *See id.* at ¶59. However, the Insureds actually spend 30 minutes or less with the physicians and present medical problems of low severity. *See id.*

Based upon the fraudulent, pre-determined outcome of the initial Examination, most Insureds are referred to an EDX Testing Defendant for a Consultation. *See id.* at ¶76. These Consultations are billed under the same billing codes, although they involve no actual medical decision-making. *See id.* at ¶77. Additionally, the EDX Testing Defendants commit fraud because they are independents contractors, not employees of the PC Defendants, yet the billing submitted by the PC Defendants for the Consultations regularly falsely states that the EDX Testing Defendants are employees of the respective PC Defendants. *See id.* at ¶¶ 5, 78.

The EDX Tests are fraudulent because: 1) they are not tailored to the unique circumstances of the Insured; 2) Clinic Defendants frequently unbundle and/or double bill for charges; 3) data submitted in testing reports is duplicated across patients who purportedly received treatment months apart at several different PC Defendants; 4) the EDX Testing Defendants routinely conduct medically unnecessary tests and unbundle the charges; 5) the EDX Testing Defendants routinely conduct incomplete tests and then submit billing as if they were complete; 6) an independent medical review determined that some tests conducted by the EDX

4

Testing Defendants frequently resulted in statistically impossible findings, indicating that they were never tested originally. ¶¶79-112.

In addition, the Clinic Defendants submit bills for ROM/Muscle Tests that are duplicative and medically unnecessary and unbundle the charges in order to maximize the fraudulent billing. ¶¶60-75. The Examinations, Consultations, EDX Tests, and ROM/Muscle Tests that defendants allegedly provide are medically useless, and are performed according to a pre-determined, fraudulent protocol. *See id.* at ¶54.

"Each category of Defendants is a necessary part of, and critical to, the success of the fraudulent scheme. For example, the Examinations and referrals made by the Clinic Defendants to the EDX Testing Defendants are a necessary part of, and critical to, the success of the fraudulent scheme because–without referrals–the EDX Testing Defendants would not be in a position to perform the Consultations and EDX Tests, which in turn permit the Clinic Defendants to bill Allstate and collect payment for the Fraudulent Services. Similarly, without the EDX Testing Defendants' performance of the Consultations and EDX Tests, the Clinic Defendants would not be able to bill Allstate and collect payment for the Fraudulent Services." *See id.* at ¶42.

"In addition, both categories of Defendants benefit from each other's participation in the scheme. On the one hand, the Clinic Defendants benefit from the scheme because: (1) they bill and collect money from Allstate and other insurers for the fraudulent charges associated with the Consultations and EDX Tests; and (ii) the EDX test results are used to justify the laundry list of additional medical services that are performed on Insureds for which the Clinic Defendants also bill and collect money from Allstate. On the other hand, the EDX Testing Defendants receive

5

payment from the Clinic Defendants and financially enrich themselves as a result of performing the Fraudulent Consultations and EDX Tests." *See id.* at ¶43.

To induce Allstate to promptly pay the charges for the Fraudulent Services, the Defendants systematically concealed their fraud. *See id.* at ¶116. For example, the Defendants deliberately and systematically submitted billing to Allstate which claims that the EDX Testing Defendants are employees of the respective PC defendants, when in fact they are independent contractors, or which deliberately omits any reference to the fact that EDX Testing Defendants are independent contractors. *See id.* at ¶¶ 49, 116. Additionally, the Defendants knowingly have misrepresented and concealed facts in order to prevent Allstate from discovering that the Fraudulent Services were medically unnecessary and performed pursuant to a fraudulent pre-determined protocol designed to maximize the charges that could be submitted. *See, e.g., id.* at ¶¶ 54-78. Defendants knowingly misrepresented and concealed facts in order to prevent Allstate from discovering that the Fraudulent Services often never were provided at all. *See id.* at ¶¶88-112. Additionally, the defendants routinely arrived at false, predetermined "diagnoses" in order to create a false appearance of necessity for the EDX Tests, the ROM/Muscle Tests, and the other Fraudulent Services. The defendants in many cases created multiple professional corporations with different tax identification numbers in order to reduce the amount of billing submitted through any single professional corporation, and thereby prevent plaintiff or law enforcement from identifying the pattern of fraudulent charges submitted through any one entity. *See id.* at ¶116.

***Procedural History***

Plaintiff's complaint names twenty defendants. Allstate has reached confidential settlement agreements and dismissed its claims against the following Defendants: 1) Jason Shevtz, M.D., Sebastian Medical, P.C. and Acute Care Medical, P.C.; 2) Billy Nabil Geris, M.D. and Jamaica Medical Plaza, P.C.; 3) Yvette Davidov, D.O. and S&R Medical, P.C.; 4) Nikolai Logaduke and Medical Polis, P.C.; 5) Kath Medical, P.C.; and 6) Maggie Morr, M.D.. Two sets of the remaining defendants have filed motions to dismiss: 1) the Etienne Defendants; and 2) the Berardi Defendants.

## *THE INSTANT MOTIONS*

Both the Etienne Defendants and the Berardi Defendants move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). The Berardi Defendants argue that the plaintiff: 1) fails to sufficiently plead an association in fact enterprise; 2) insufficiently alleges the existence of an enterprise separate and apart from the racketeering activity; and 3) insufficiently pleads a RICO conspiracy. The Etienne Defendants argue pursuant to Rule 12(b)(6) that the complaint insufficiently alleges the existence of an enterprise separate and apart from the racketeering activity.

The Etienne Defendants also move to dismiss pursuant to Fed. R. Civ. P. 9(b). With regard to Rule 9(b), their motion argues: 1) that Allstate was required to specify the time, place, speaker, and content with respect to each alleged misrepresentation; 2) that Allstate was required to particularize each Defendants' alleged participation in the respective, interrelated schemes; and 3) that no single type of fraud was alleged with the requisite specificity.

Additionally, The Etienne Defendants request that the Court decline jurisdiction and dismiss plaintiff's complaint in its entirety in the event that the RICO claims are dismissed. The

Etienne Defendants argue that such a dismissal would remove the court's only source of jurisdiction.

## *DISCUSSION*

### *The Rule 12(b)(6) Standard*

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a defendant may move to dismiss an action for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion, a court must accept all of the factual allegations in the complaint as true and must draw all reasonable inferences in the plaintiff's favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Ofori-Tenkorang v. Am. Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006). A court must then determine whether a plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A complaint cannot make merely "a formulaic recitation of the elements of a cause of action," but must allege facts that "raise a right of relief above the speculative level on the assumption that all allegations in the complaint are true." *Id.* at 555 (citations omitted).

"When determining the sufficiency of the [plaintiff's] claim. . ., consideration is limited to the factual allegations in [plaintiff's]. . .complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in by reference, to matters of which judicial notice may be taken, or to documents either in [plaintiff's] possession or of which [plaintiff] had knowledge and relied on in bringing suit." *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

This Court will consider documents outside the complaint that may properly be considered in connection with a motion under Rule 12(b)(6), where "a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). In the instant case, Plaintiff relies on and attaches twenty-one exhibits to its Complaint. *See* Complaint, Exhibits 1-21.

**The RICO Statute**

To state a claim for a violation of RICO, plaintiff must allege: "1) that the defendant; 2) through the commission of two or more acts; 3) constituting a 'pattern'; 4) of 'racketeering activity'; 5) directly or indirectly invests in, or maintains an interest in, or participates in; 6) an 'enterprise'; 7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (quoting 18 U.S.C. § 1962(a)-(c)). Additionally, in order to invoke RICO's civil remedy of treble damages, attorneys fees, and costs, a plaintiff must allege that it was "injured in its business or property by reason of a violation of section 1962." *Id.* (quoting 18 U.S.C. § 1964(c)).

The Etienne Defendants and the Berardi Defendants together allege that Allstate has failed to sufficiently plead a RICO "enterprise". The defendants specifically contend that plaintiff has failed to allege facts demonstrating an enterprise that is: 1) separate and distinct from the alleged pattern of racketeering activity; or 2) distinct from the persons who allegedly committed the predicate acts. The defendants further allege that plaintiff has failed to plead its RICO claims with the specificity required under Fed. R. Civ. P. 9(b).

**The Enterprise Element**

9

A RICO enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A RICO enterprise "need not have a hierarchical structure or a 'chain of command.'" *Boyle v. United States*, 129 S.Ct. 2237, 2245 (2009). The statute's "enumeration of included enterprises is obviously broad. . .and the very concept of an association in fact is expansive." *Id.* at 2243. In *United States v. Turkette*, 452 U.S. 576, 583 (1981), the Supreme Court explained that "an enterprise includes any union or group of individuals associated in fact" including "a group of persons associated together for a common purpose of engaging in a course of conduct." The existence of a RICO enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.*

In *Boyle*, the Supreme Court addressed whether an association-in-fact enterprise must have "an ascertainable structure beyond that inherent in the pattern of racketeering activity in which it engages." *Boyle* at 2244. The Court found that an association-in-fact enterprise must have at least three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle* at 2244. The Court specifically rejected petitioner's contention in *Boyle* that an enterprise must have some structural features such as "hierarchy," "role differentiation," a "unique modus operandi," a "chain of command," "professionalism and sophistication of organization," or a "diversity and complexity of crimes. . ." *Boyle* at 1245. Instead, the Court "[saw] no basis in the language of RICO for the structural requirements that petitioner asks us to recognize. As we said in *Turkette*, an association-in-fact enterprise is simply a continuing unit that functions with a

10

common purpose." *Boyle* at 1245. Moreover, a court in this district has noted that the *Boyle* decision "establishes a low threshold for pleading such an enterprise. . ." *McGee v. State Farm Mut. Auto. Ins. Co.*, 2009 WL 2132439 (E.D.N.Y. 2009).

Under the Supreme Court's standard in *Boyle*, the plaintiff in the instant case has sufficiently pled a RICO enterprise. The Berardi Defendants allege, "There are simply no allegations by plaintiff identifying the 'hierarchy, organization, and activities' of the alleged enterprise, and any facts specifying 'how these members joined together as a group to achieve these purposes.'" Berardi Motion at 11. This legal standard advocated by the Berardi Defendants fails to comport with the standard clearly explained by the Supreme Court in *Boyle*, which requires only that a plaintiff plead "a group of entities associated together for a common purpose of engaging in a course of conduct." *Boyle* at 2244. Pleading a hierarchy or a structural organization is not necessary.

The Complaint sets forth numerous facts demonstrating how both the Berardi Defendants and the Etienne Defendants functioned as continuing units with common purposes. *See, e.g.*, Complaint at 4-5, 8, 10, 15-17, 20-22, 28-30, 40-114. Specifically, the Complaint alleges that Dr. Berardi is the physician who incorporated Arco, Neomy, and Kath, and who purports to be their sole shareholder, director, and officer. *See* Complaint at ¶195. The Complaint alleges that Dr. Berardi also purports to perform and issue reports based on allegedly fraudulent services. *See id.* The Complaint also alleges that the Berardi Defendants engaged in their activities for more than three years, a sufficient time period to satisfy RICO's longevity requirement. *Id.* at ¶198; *see Automated Teller Mach. Advantage LLC v. Moore*, 2009 WL 2431513 at *5-6 (S.D.N.Y. 2009) (plaintiff adequately alleges longevity when fraudulent acts occurred for a period of over

11

two years). Thus, the Complaint sufficiently alleges the enterprise element of the RICO statute.

**The Distinctiveness Requirement**

Defendants argue that plaintiff has failed to allege who constituted a separate enterprise in the alleged fraudulent scheme. Under the RICO statute, "the RICO 'person' must conduct the affairs of the RICO 'enterprise' through a pattern of racketeering activity." *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994). "'An enterprise must be an entity separate and apart from the pattern of activity in which it engages.'" *Crab House of Doublaston, Inc. v. Newsday, Inc.*, 418 F.Supp.2d 193, 205 (E.D.N.Y. 2006) (quoting *Turkette*, 452 U.S. at 583). A corporate entity "may not be both the RICO person and the RICO enterprise under section 1962(c). *Riverwoods* at 344. However, "a defendant may be a RICO person and one of a number of members of the RICO enterprise." *Riverwood* at 344; *see also Allstate Ins. Co. v. Valley Physical Med. & Rehab. P.C.*, 2009 WL 3245388 (E.D.N.Y. 2009) (finding sufficient pleading of an association-in-fact enterprise which was composed of corporate entities and their principals where both the corporate entities and their principals were also alleged as individual RICO persons); *see also Cedric Kushner Promotions, Ltd. V. King*, 533 U.S. 158, 163 (2001) (stating that a "corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity...").

The Complaint properly alleges an association-in-fact enterprise with distinct RICO persons and RICO enterprises. The plaintiff alleges that the EDX Testing Defendants were members in each association-in-fact enterprise, and that they were non-exclusive independent contractors. The plaintiff specifically alleges that the EDX Testing Defendants were not agents of the PC defendants. *See, e.g.*, Complaint at ¶ 2. Furthermore, the Complaint alleges that the

association-in-fact enterprises, and not the PC defendants themselves, collectively recruited professionals and non-professionals to perform tasks beyond the acts of mail fraud, entered into billing and collections agreements, negotiated lease agreements, maintained bookkeeping and accounting functions, collectively colluded to conceal the fraudulent scheme. *See, e.g.*, Complaint at ¶¶ 126, 196, 301. The Complaint also alleges that the schemes in which the association-in-fact enterprises engaged would be beyond the means of any of their individual participants. *Id.*, e.g. At 125, 195, 300. Thus, plaintiff has sufficiently pled distinct persons and enterprises to satisfy the distinctiveness requirement of 18 U.S.C. 1962(c).

**The Enterprise and the Pattern of Racketeering Requirements**

The defendants argue that the Complaint fails to sufficiently allege the existence of an enterprise separate and apart from the racketeering activity and that the RICO statute requires plaintiff to allege facts demonstrating that the enterprise is ascertainably distinct from the racketeering activity in which it engages. However, defendants' interpretation of the law is incorrect on this point. In *U.S. v. Turkette*, the Supreme Court stated that "the Government must prove both the existence of an 'enterprise' and the connected 'pattern of racketeering activity.'" 452 U.S. at 583. In *Boyle*, the Supreme Court clarified that "the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise 'may in particular cases coalesce.'" *Boyle* at 2245 (quoting *Turkette*, 452 U.S. at 583). The *Boyle* Court explained that the phrase at issue in a jury instruction, "beyond that inherent in the pattern of racketeering activity," is correctly "interpreted to mean that the enterprise's existence is a separate element that must be proved," however, "if the phrase is used to mean that the existence of an enterprise may never be inferred from the evidence showing that persons associated with the enterprise

13

engaged in a pattern of racketeering activity, it is incorrect." *Boyle* at 2245. The *Boyle* Court noted, "[T]he trial judge did not err in instructing the jury that 'the existence of an association-in-fact is oftentimes more readily proven by what it does, rather than by abstract analysis of its structure.'" *Boyle* at 2247 (quoting *Turkette*, 452 U.S. at 111-112). Thus, this Court declines to adopt the defendants' argument that an "enterprise" is an element that must be ascertainably distinct from the pattern of racketeering activity. It is a separate element that must be established as part of the RICO offense, but it does not need to be ascertainably distinct from the pattern of racketeering activity. *See United States v. Mazzei*, 700 F.2d 85, 89 (2d Cir. 1983) (declining to "read *Turkette* to hold that proof of these separate elements be distinct and independent, as long as the proof offered is sufficient to satisfy both elements.")

Despite the fact that *Boyle* does not require such distinctiveness, the Complaint sufficiently pleads the existence of a RICO enterprise separate and apart from the pattern of racketeering alleged. For example, the Complaint sets forth the acts of mail fraud. The Complaint alleges that the enterprise recruits professionals and non-professionals, deploys them to perform tasks beyond the acts of mail fraud, creates and maintains patient files, negotiates and executes contracts, etc. *See, e.g.*, Complaint at ¶¶126, 196. These activities are distinct from the act of mailing fraudulent bills to plaintiff, thus although not necessary under *Boyle*, plaintiff has pled a RICO enterprise that is distinct from the pattern of racketeering alleged. Defendants' argument that the Complaint only discusses the acts of the enterprise in terms of the allegedly fraudulent services is unpersuasive. Read in the light most favorable to the Plaintiff, the Complaint lists acts such as recruiting and supervising personnel, negotiating and executing

billing and collection agreements, equipment lease agreements, and management agreements, separate and apart from the pattern of racketeering alleged. *See* Complaint at ¶¶ 126, 196.

**RICO Conspiracy**

To establish a RICO conspiracy, the plaintiff,

> must prove that a defendant agreed to participate in the affairs of the enterprise through a pattern of racketeering activity. However...the government need not prove that the defendant himself agreed that he would commit two or more predicate acts...It is well-settled that a conspirator need not be fully informed about his co-conspirators' specific criminal acts provided that he agreed to participate in the broader criminal conspiracy and the acts evincing participation were not outside of the scope of the illegal agreement. 'A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of the other.'

*United States v. Yanotti*, 541 F.3d 112, 121-22 (2d Cir. 2008) (quoting *Salinas v. United States*, 522 U.S. 52, 63-64 (1997) (internal citations omitted).

The Berardi Defendants argue that the plaintiff must allege that each defendant agreed to personally commit at least two predicate acts, however, this is not the standard for pleading a RICO conspiracy. The Berardi Defendants cite to *Bueneo v. City of New York*, 2007 WL 1062959 at *4 (E.D.N.Y. 2007), *Odyssy Re (London) Ltd. V. Stirling Cooke Brown Holdings, Ltd.*, 85 F.Supp.2d 282, 303 (S.D.N.Y. 2000), and *Miller v. City of New York, 2007 WL 1062505* (E.D.N.Y.), all of which rely on pre-*Salinas* cases to support their propositions. "However, in *Salina v. United States*, 522 U.S. 52, 64 (1997), the Supreme Court made clear that to establish this [a RICO conspiracy], the government need not prove that the defendant himself agreed that he would commit two or more predicate acts." The *Salinas* Court found that "to be found guilty

of RICO conspiracy, a defendant need only know of, and agree to, the general criminal objective of a jointly undertaken scheme." *Yanotti*, 541 F.3d 122 (citing *Salinas*, 522 U.S. at 63).

Under the standard elucidated in *Yanotti*, Allstate has sufficiently alleged a conspiracy amongst the defendants. Allstate alleged both that the defendants each agreed to participate in the respective schemes, and that they had knowledge of each co-conspirator's role in the predicate acts of mail fraud. *See, e.g.*, Complaint at 5, 40-43, 78, 86, 116, 134-35, 204-05, 309-10. Allstate also alleged that each group of defendants benefitted from each other's participation in the scheme. *See, e.g.*, Complaint at 4, 40-43.

**Plaintiff has Sufficiently Pled its Claims under Rule 9(b)**

The Etienne Defendants contend that plaintiff's complaint lacks sufficient specificity under Fed. Rule Civ. Pro. 9(b). The Etienne Defendants allege the following with regard to Rule 9(b): 1) the plaintiff was required to specify the time, place, speaker, and content with respect to each alleged misrepresentation; 2) the plaintiff was required to particularize each of the defendants' alleged participation in the respective schemes; and 3) the plaintiff failed to allege each of multiple types of fraud with the requisite specificity. Specifically, the Etienne Defendants contend that because Allstate alleges that the billing they submitted misrepresents the EDX Testing Defendants' employment status, or deliberately omits any mention of their employment status, the defendants are unable to discern what type of fraud is being alleged. Additionally, the Etienne Defendants argue that because Allstate alleges that some testing was duplicative, unbundled, and in some cases not performed at all, these allegations are not pleaded with the requisite specificity. This Court finds that plaintiff's complaint satisfies the requirements of Rule 9(b).

Rule 9(b) states in pertinent part: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. Rule Civ. Pro. 9(b). "Rule 9(b) 'is designed to provide the defendant fair notice of the plaintiff's claims, and to enable the defendant to prepare a suitable defense, protect his reputation or goodwill from harm, and reduce the number of strike suits." *Atlantic Gypsum Co., Inc. v. Lloyds International Corp.*, 753 F.Supp. 505, 512 (S.D.N.Y. 1990) (quoting *O'Brien v. Price Waterhouse*, 740 F.Supp. 276, 279 (S.D.N.Y. 1990)). When the mail is used "in furtherance of a master plan to defraud, the mailings need not contain fraudulent information, and a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications, is sufficient to satisfy Rule 9(b)." *Aiu Ins. Co. V. Olmecs Medical Supply, Inc.*, 2005 WL 3710370 at *11 (E.D.N.Y. 2005) (citing *In re Sumitomo Copper*, 995 F.Supp. At 456). "In complex civil RICO actions involving multiple defendants, Rule 9(b) does not [](sic) require that the 'temporal or geographic particulars of each mailing made in furtherance of the fraudulent scheme be stated with particularity,' but only that the 'plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme.'" *Id.* (quoting *In re Sumitomo Copper*, 995 F. Supp. at 456.)

In an action similar to the instant case, *Allstate Ins. Co. v. Halima*, 2009 WL 750199 (E.D.N.Y. 2009), which involved certain non-physicians ("the Palter Defendants") who secretly owned and controlled a professional medical corporation in conjunction with other unlicenced individuals and entities ("the Management Defendants"), the Palter Defendants argued that Allstate failed to particularize the role and acts of the Palter Defendants by grouping them with

17

the so-named Management Defendants. The Court in *Halima*, however, found that plaintiffs alleged that particular doctors, prescribing physicians, and other Management Defendants submitted several thousand fraudulent claims by mail, and plaintiff's presented a sample of 916 allegedly fraudulent claims submitted by the Palter Defendants. *Id.* at *5 "These allegations sufficiently set forth the role of the Palter Defendants and the acts of fraud they are alleged to have committed." *Id.*

Similarly, in the instant case Plaintiff has identified those responsible for the fraudulent acts–namely the Clinic Defendant and the EDX Testing Defendants associated with each individual enterprise. *See, e.g.* Complaint at ¶¶40-43, 125, 128, 195, 198, 300, 303. *See Halima*. Additionally, the complaint sets forth specific detail regarding the defendants' respective fraudulent schemes. *See id.* at ¶¶40-114. Allstate has also attached to the Complaint Exhibits 1, 3, and 6, which are charts that provide a detailed representative sampling of the alleged fraudulent mailings. See *Allstate Ins. Co. V. Ahmed Halima*, 2009 WL 750199 at *5 (E.D.N.Y. 2009); *CPT Med. Servs.*, et al. at *39 (holding that similar pleadings in RICO actions meet the particularity requirements of Rule 9(b)).

Contrary to the Etienne Defendants' assertions, this Court finds that the Complaint pleads specific facts describing each fraudulent scheme, the role of each of the Defendants, and the elements of fraud with respect to each Defendant. *See* Complaint at ¶¶40-112. These allegations are sufficient to meet the particularity requirements of Rule 9(b). *See, e.g., State Farm Mut. Auto. Ins. Co. V. Liguori*, 589 F. Supp. 2d 221 (E.D.N.Y. 2008).

Furthermore, the Complaint sufficiently pleads scienter. *See Liguori*, 589 F Supp. 2d at 238 (strong inference of fraudulent intent demonstrated by allegation showing that: 1) defendants

had both motive and opportunity to commit fraud; or 2) facts indicating strong circumstantial evidence of conscious misbehavior or recklessness). The Complaint pleads specific facts that Defendants had motive and opportunity to commit fraud and actually did so. *See, e.g.* Complaint at ¶¶42-44, 128, 131, 198, 201, 303, 306. For instance the Complaint alleges that the Etienne Defendants "knowingly conducted and/or participated, directly or indirectly, in the conduct of the Etienne Fraudulent Testing Enterprise..." *Id.* at ¶128. The Complaint also details how the defendants "benefit from each other's participation in the scheme." *Id.* at 42. In addition, the Complaint alleges that the Clinic Defendants and EDX Testing Defendants submitted, or caused to be submitted, fraudulent bills to Allstate and details the scheme allegedly used by Defendants. *See id.* at ¶5. These allegations satisfy the scienter requirement of Rule 9(b).

**This Court has Jurisdiction**

The Etienne Defendants request that this Court decline jurisdiction and dismiss Allstate's Complaint in its entirety in the event that RICO claims are dismissed. The Court denies Defendants' motions to Dismiss, and therefore retains jurisdiction.

## CONCLUSION

For the reasons set forth above, the motions of both the Etienne Defendants and the Berardi Defendants are denied.

SO ORDERED.

Dated: Brooklyn, New York
October 2010

/SANDRA L. TOWNES
United States District Judge