UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

ALLSTATE INSURANCE COMPANY,                    Docket No.: CV 09-3582 (SLT) (RLM)

                                Plaintiff,

        -against-

VIVIANE ETIENNE, M.D., et al.,

                                Defendants.

-------------------------------------------------------------------X

### PLAINTIFF ALLSTATE INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO BERARDI DEFENDANTS' MOTION TO STRIKE OR PRECLUDE

Barry I. Levy (BL 2190)
Max Gershenoff (MG 4648)
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

*Counsel for Plaintiff*
*Allstate Insurance Company*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF RELEVANT FACTS .................................................................................... 1

ARGUMENT............................................................................................................................... 6

I.    The Standards on a Motion to Preclude..............................................................................6

II.   Allstate's Expert Disclosures Complied With Fed. R. Civ. P. 26(a)(2)(B)........................7

III.  The Berardi Defendants' "Impermissible Sampling" Argument is Meritless ..................10

IV.  Allstate Responded Appropriately to the Berardi Defendants' 27th Interrogatory,
and Allstate's Response Provides No Basis for the Present Motion .................................11

V.   To the Extent That the Berardi Defendants' Motion Constitutes an Attempt to
Secure a Belated Extension in the Deadlines for Expert Disclosure, the Motion
Should Be Denied ............................................................................................................13

CONCLUSION........................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P.,
    396 B.R. 810 (Bankr. S.D.N.Y. 2008) ........................................................................................9

Fairfield Fin. Mortg. Group v. Luca,
    2008 U.S. Dist. LEXIS 94159 (E.D.N.Y. 2008) ........................................................................6

Gavenda v. Orleans County,
    No. 95-CV-0251E (SC), 1996 U.S. Dist. LEXIS 9469, 1996 WL 377091 (W.D.N.Y.
    June 19, 1996) ...........................................................................................................................13

Gotlin v. Lederman,
    2009 U.S. Dist. LEXIS 78818 .................................................................................................14

Grochowski v. Phoenix Constr.,
    318 F.3d 80 (2d Cir. 2003) .......................................................................................................13

Harris v. Computer Assocs. Int'l, Inc.,
    204 F.R.D. 44 (E.D.N.Y. 2001) ...............................................................................................14

Joseph S. v. Hogan,
    2011 U.S. Dist. LEXIS 76762 (E.D.N.Y. 2011) ........................................................................9

Kargo Global, Inc. v. Advance Magazine Publrs., Inc.,
    2007 U.S. Dist. LEXIS 57320 (S.D.N.Y. 2007) ......................................................................11

King v. Friend of Farmer, Inc.,
    No. 97 Civ. 9264 (BSJ) (RLE), 2000 U.S. Dist. LEXIS 3538, 2000 WL 290355
    (S.D.N.Y. Mar. 17, 2000) .........................................................................................................13

Kosher Sports, Inc. v. Queens Ballpark Co.,
    LLC, 2011 U.S. Dist. LEXIS 86651 ...........................................................................................7

Mahoney v. Keyspan Corp.,
    No. CV 04—554, 2007 U.S. Dist. LEXIS 41214, 2007 WL 1651853 (E.D.N.Y. June
    6, 2007) ........................................................................................................................................7

Playtex Prods. v. Procter & Gamble Co.,
    2003 U.S. Dist. LEXIS 8913 (S.D.N.Y. 2003) ........................................................................11

Rowe Entm't, Inc. v. William Morris Agency, Inc.,
    2003 U.S. Dist. LEXIS 15976 (S.D.N.Y. 2003) ......................................................................11

Update Art, Inc. v. Modiin Publ'g, Ltd.,
    843 F.2d 67 (2d Cir. 1988)........................................................................................................7

Walsh v. Chez,
    583 F.3d 990 (7th Cir. 2009) ..................................................................................................9

## PRELIMINARY STATEMENT

Plaintiff Allstate Insurance Company ("Plaintiff" or "Allstate") respectfully submits this memorandum of law in opposition to the motion by Defendants Richard Dominick Berardi, Jr., D.O. ("Dr. Berardi"), Arco Medical NY, P.C. ("Arco"), and Neomy Medical, P.C. ("Neomy")(collectively the "Berardi Defendants"), to preclude Allstate's "medical expert information" pursuant to Fed. R. Civ. P. 26 and 37. Like their previous two attempts to move against Allstate's expert reports and testimony (see Docket Nos. 245-248), the Berardi Defendants' most recent motion is untimely, procedurally defective, frivolous, and should be denied.[1]

## STATEMENT OF RELEVANT FACTS[2]

The factual and procedural setting of the Berardi Defendants' present motion underscores its frivolity. Primarily, the Berardi Defendants contend that they have been prejudiced because Allstate failed to disclose certain patient records containing matching nerve conduction velocity ("NCV") test data that Allstate's expert witnesses considered in preparing their expert reports. See Declaration of Matthew J. Conroy in Support of Motion to Preclude ("Conroy Decl.") at ¶¶ 10-11, 18-22; see also Berardi Defendants' Memorandum of Law in Support of Motion to

---

[1] Though the Court denied the Berardi Defendants' previous two motions based – among other things – on their failure to abide by the Local Civil Rules and the Court's Individual Rules (see Docket Nos. 246, 248, noting that the Berardi Defendants failed to meet and confer with Allstate regarding the dispute), the Berardi Defendants persist in disregarding the Local Civil Rules and the Court's Individual Rules. Specifically, Local Civil Rule 37.3 and Section III of the Court's Individual Rules clearly provide that: (i) discovery disputes should be raised via a three-page letter; and (ii) motion papers may not be submitted on a discovery dispute unless the Court grants permission to do so. Nonetheless, without obtaining permission from the Court, the Berardi Defendants have submitted an extensive set of motion papers rather than the requisite three-page letter. Allstate is unable to respond to the Berardi Defendants' lengthy, unauthorized submission in three pages, and therefore respectfully requests that the Court consider these opposing papers in their entirety.

[2] The facts relevant to this memorandum of law are drawn from the Declaration of Barry Levy ("Levy Decl."), submitted herewith.

Preclude ("Berardi Memo") at pp. 3-4. Accordingly, the Berardi Defendants posit that Allstate's putative non-disclosure has prevented them from rebutting Allstate's expert witnesses.

This simply is false. Allstate either produced, or offered to produce, every patient record in its possession that its experts considered in preparing their reports, <u>before</u> Allstate ever produced its expert reports – indeed, <u>before</u> Allstate ever submitted the patient records to the expert witnesses, themselves. <u>See</u> Levy Decl. at ¶ 5. Specifically:

(i)  In July 2010 Allstate produced, on CD-ROM, every Arco and Neomy patient record in its possession, long before these records ever were submitted to Allstate's expert witnesses. <u>See</u> July 2, 2010 letter from Max Gershenoff, Esq. to Alexander Levine, Esq., one of the Berardi Defendants' attorneys, annexed as Exhibit "A" to the Levy Decl..

(ii)  On May 17, 2011, the parties appeared before the Court for a settlement conference. I personally appeared at the conference with a representative sample of nerve conduction velocity ("NCV") test data generated by the Berardi Defendants, together with NCV test data from other healthcare providers that were in Allstate's possession which exactly matched the data generated by the Berardi Defendants – a biological impossibility that Allstate contends demonstrates the Berardi Defendants' fraud. During the conference, Mr. Levy offered to produce the entire set of matching data for inspection by the Berardi Defendants.

(iii)  On May 26, 2011, Mr. sent a representative sample of the matching NCV test data to Edward Blodnick, Esq. ("Mr. Blodnick"), one of the attorneys for the Berardi Defendants, and specifically noted that the data had not yet been submitted to Allstate's expert witnesses. <u>See</u> May 26, 2011 e-mail and attachments, annexed as Exhibit "B" to the Levy Decl.. Within a couple of days thereafter, Mr. Levy had a larger sample of matching NCV data delivered to Mr. Blodnick's office for his review.

(iv)  On several occasions during the last week of May and the first week of June 2011, Mr. Levy spoke with Mr. Blodnick in an attempt to facilitate settlement and reiterated Allstate's offer to produce the entire set of matching data for inspection by the Berardi Defendants.

<u>See</u> Levy Decl. at ¶ 5.

2

However, neither the Berardi Defendants nor their attorneys evinced any interest in inspecting the matching NCV test data that Allstate compiled for submission to its experts. See Levy Decl. at ¶ 6.

Accordingly, on June 10, 2011 Allstate submitted the data to its experts and instructed them to compile the expert reports. See Levy Decl. at ¶ 7.

Pursuant to the Court's May 18, 2011 Scheduling Order (see Docket No. 241), Allstate was required to serve its expert disclosures by July 1, 2011, and the Berardi Defendants were required to serve their expert disclosures by August 19, 2011. Expert depositions were to be completed by September 15, 2011. See Levy Decl. at ¶ 8.

Allstate timely served its expert disclosures by July 1, 2011. See Levy Decl. at ¶ 9. The disclosures included the following expert reports:

(i)     Report of Randall L. Braddom, M.D., M.S. on Patient Charts and Electrodiagnostic Studies at Arco Medical NY, P.C. and Neomy Medical, P.C. (the "Braddom Report", annexed as Exhibit "C" to the Levy Decl.).

(ii)    Report of Alan Julian Izenman, Ph.D. on Statistical Sampling of Patients Who Received Neurological Consultations, Nerve Conduction Velocity Tests, and Electromyography Tests Billed to Allstate Insurance Company Through Arco Medical NY, P.C. and Neomy Medical, P.C. (the "Izenman Report", annexed as Exhibit "D" to the Levy Decl.).

(iii)   Report of Matthew Shatzer, D.O. on Computerized Range of Motion and Muscle Testing at Arco Medical NY, P.C. and Neomy Medical, P.C. (the "Shatzer Report", annexed as Exhibit "E" to the Levy Decl.).

(iv)    Report of Jacqueline Thelian, CPC, CPC-I on Billing Practices Employed by Arco Medical NY, P.C. and Neomy Medical, P.C. (the "Thelian Report", annexed as Exhibit "F" to the Levy Decl.).

See Levy Decl. at ¶ 9.

The Berardi Defendants did not raise any objection to Allstate's expert disclosures for more than a month and a half after they were served. See Levy Decl. at ¶ 10. Nor did the Berardi

3

Defendants ask to review the matching NCV data that Allstate provided to its experts and repeatedly offered up for inspection. Id.

On August 19, 2011 – the date on which their own expert disclosures were due and almost 3 months after Allstate's counsel had spoken with Mr. Blodnick and sent him the representative samples of the matching NCV data – counsel for the Berardi Defendants, without any attempt to meet and confer as required by the Local Civil Rules and the Court's Individual Rules, filed a motion to preclude Allstate's proposed expert testimony. See Docket No. 245; see also Levy Decl. at ¶ 11. In denying the motion without prejudice, the Court not only noted the Berardi Defendants' failure to comply with Court rules, but also observed that the Berardi Defendants did not support their motion with sufficient legal authority. See Docket No. 246, fn. 2; see also Levy Decl. at ¶ 12.

A few days after the motion was denied, Allstate's counsel spoke with Maria Diglio, Esq., counsel to the Berardi Defendants, and offered to produce any documents to the Berardi Defendants regarding the expert reports that the Berardi Defendants did not already have. Ms. Diglio said she would get back to Allstate's counsel – she never did.[3] See Levy Decl. at ¶¶ 13-14 .

On at least 2 other occasions in early September 2011, Allstate's counsel reiterated the offer to Matthew Conroy, Esq., another of the Berardi Defendants' attorneys. See Levy Decl. at ¶ 14. Mr. Conroy expressed no interest in either reviewing the records or having them produced. Id.

Instead, the Berardi Defendants waited another month – until September 16, 2011, one day after the deadline for expert depositions had passed – and then filed another motion to preclude.

---

[3]     As noted above, this was not the first time that Allstate had offered to produce these documents for inspection by the Berardi Defendants. Allstate offered them for inspection well before it produced its expert reports, and the only reason the Berardi Defendants had not see them by late August 2011 is because the Berardi Defendants never bothered to respond to Allstate's offers to make them available. See Levy Decl. at ¶ 13.

4

See Docket No. 247; see also Levy Decl. at ¶ 15. The Berardi Defendants also sought a stay of discovery, supposedly so that they could obtain sufficient time to muster a rebuttal of Allstate's expert reports. Id. However, the Berardi Defendants once again failed to meet and confer before filing their second motion to preclude, and did not cite any authority that was not contained in their previous, defective motion. Id.; also compare Docket Nos. 245 and 247.

The Court denied the Berardi Defendants' second motion to preclude, noting that it was virtually identical to their first motion, legally deficient, and procedurally defective. See Docket No. 248; see also Levy Decl. at ¶ 16. The Court also denied the Berardi Defendants' motion to stay discovery, observing that the deadlines for serving expert disclosures had expired, and that the deadlines for conducting expert depositions also had expired. Id. The Court's denial of the Berardi Defendants' motion to preclude was without prejudice – however, the Court's denial of the Berardi Defendants' motion to stay discovery was with prejudice. Id.

On the afternoon of September 20, 2011 (after the motion was denied for the second time), Allstate's counsel met with Mr. Conroy for more than an hour to discuss settlement, and walked him through a series of record groups that he brought to the meeting involving the Berardi Clinics (i.e. Arco and Neomy) where matching NCV data had been identified. See Levy Decl. at ¶ 17. Allstate's counsel told Mr. Conroy that the other sets were sitting in the law firm's record room, and that he could have access so that he could review them for himself. Id. Mr. Conroy declined - however, Allstate's counsel compiled a binder including the matching data that was discussed on September 20, 2011 and sent to Mr. Conroy by federal express that same day. Id.

At 10:42 p.m. that same evening, the Berardi Defendants served the present motion to preclude despite having once declined the opportunity to review or to have the records produced.

5

In addition, the motion appeared to include a request for a stay of discovery – even though their first motion to stay discovery was denied with prejudice. See Levy Decl. at ¶ 18.

Plainly, the Berardi Defendants sat on their hands and did not engage any expert – either on their own account or to rebut Allstate's expert testimony – within the deadlines set by the Court in the May 18, 2011 Scheduling Order. See Levy Decl. at ¶ 19. Nor did they bother to review the duplicated NCV test data that Allstate submitted to its experts and repeatedly offered to produce to them. Id. Now, at the 99th hour, after every deadline has passed, they have filed a third motion to preclude that advances the same defective legal theories set forth in their previous motions. Id.

It therefore appears that the Berardi Defendants do not actually believe that their legal theories have any merit. Rather, it appears as if the Berardi Defendants repeatedly have filed frivolous motions to preclude in an attempt to avoid the consequences of their own failure to adhere to the Court's deadlines for expert disclosure. See Levy Decl. at ¶ 20.

## ARGUMENT

### I.     The Standards on a Motion to Preclude

The Berardi Defendants' latest attempt to move against Allstate's expert reports is predicated on Fed. R. Civ. P. 37(c)(1), which provides for a range of potential sanctions, including preclusion, if a party fails to provide expert disclosures as required by Fed. R. Civ. P. 26(a)(2)(B).

In deciding whether to impose sanctions pursuant to Rule 37, Courts consider: (i) the willfulness of the noncompliant party or the reasons for noncompliance; (ii) the efficacy of lesser sanctions; (iii) the duration of the period of noncompliance; and (iv) whether the noncompliant party had been warned of the consequences of his noncompliance. See, e.g., Fairfield Fin. Mortg. Group v. Luca, 2008 U.S. Dist. LEXIS 94159 at * 18 (E.D.N.Y. 2008).

However, as this Court recently noted:

Courts in this Circuit typically consider preclusion a "harsh" remedy to be "imposed only in rare situations." Update Art, Inc. v. Modiin Publ'g, Ltd., 843 F.2d 67, 71 (2d Cir. 1988). Indeed, while Rule 37(c) identifies preclusion as the default remedy, courts treat it as discretionary and disfavored. "Notwithstanding the seemingly mandatory language of [Rule 37(c)], even where the failure to disclose is neither 'justifi[ed]' nor 'harmless,' the Second Circuit has viewed the imposition of sanctions as discretionary and district courts have generally not ordered preclusion." Mahoney v. Keyspan Corp., No. CV 04—554, 2007 U.S. Dist. LEXIS 41213, 2007 WL 1651853, at *1 (E.D.N.Y. June 6, 2007) (citing, inter alia, Design Strategy, Inc. v. Davis, 469 F.3d 284, 297—98 (2d Cir. 2006)).

Kosher Sports, Inc. v. Queens Ballpark Co., LLC, 2011 U.S. Dist. LEXIS 86651 at * 42 - * 43

(E.D.N.Y. 2011)(Mann, M.J.).

## II.    Allstate's Expert Disclosures Complied With Fed. R. Civ. P. 26(a)(2)(B)

Fed. R. Civ. P. 26(a)(2)(B) requires an expert report to contain, among other things: (i) "a complete statement of all opinions the witness will express and the basis and reasons for them"; and (ii) "the facts or data considered by the witness in forming them".

The Berardi Defendants contend that Allstate's expert reports fail to meet these requirements, because Allstate supposedly failed to disclose "the sampling of records from various medical providers that Plaintiff's experts purport to rely on when forming the opinion that Defendants had falsified medical records." See Conroy Decl. at ¶¶ 13-16; Berardi Memo at pp. 3-4. The Berardi Defendants cite only one example of this supposed non-disclosure. Specifically, the Berardi Defendants point to page 20 of the Braddom Report, in which Dr. Braddom states that:

The Berardi PCs used studies that contained duplicate data and/or waveform graphics. These duplications occurred both within this group of 72 studies and other studies that were in our files from other investigations (See Exhibit 7).

See Conroy Decl. at ¶ 17; Berardi Memo at pp. 3-4.

Though it is difficult to follow their reasoning, the Berardi Defendants appear to contend that the Braddom Report either: (i) failed to identify the 72 NCV studies referenced by Dr.

7

Braddom; or (ii) failed to identify the other NCV studies that were in Dr. Braddom's files from previous investigations. Either way, the Berardi Defendants are wrong. In actuality, the Braddom Report identifies every single patient record that Dr. Braddom considered in preparing his expert opinion – by claim number, patient initials, record type, and by identity of the healthcare provider who supposedly provided the services resulting in the claim. See Levy Decl., Exhibit "C", at pp. 1-2, 21, 31-34, 44-49, 94-95, Exhibit "4", and Exhibit "7".

The Berardi Defendants – without giving any specifics – seem to contend that Allstate's other expert reports (i.e., the Izenman Report, Shatzer Report, and Thelian Report) also were predicated on undisclosed patient records. See Conroy Decl. at ¶¶ 9-11 (contending in unspecified fashion that Allstate failed "to provide disclosure of the records upon which the opinions were based")(emphasis added); 16 (contending in unspecified fashion that Allstate "has not disclosed the sampling of records from various medical providers that Plaintiff's experts purport to rely on")(emphasis added); see also Berardi Memo at p. 3 ("Plaintiff fails to provide a complete statement disclosing the records upon which the experts' opinions were based … .").

Once again, the Berardi Defendants are wrong – like the Braddom Report, all of Allstate's other substantive expert reports identify every single patient record that the experts considered in preparing their opinions – by claim number, patient initials or full patient name, record type, and by identity of the healthcare provider who supposedly provided the services resulting in the claim. See Levy Decl., Exhibit "E", at pp. 26-27, 33-39; Exhibit "F", at pp. 18-19 and Exhibit A.[4]

---

[4] The Izenman Report, which sets forth the statistical methodology used for selecting the random sample of Arco and Neomy patients considered by Dr. Braddom in the Braddom Report, does not identify the 38 patients in the random sample. Rather, these 38 patients are identified in the Braddom Report, itself. See Levy Decl., Exhibit "D", at pp. 2-4; Levy Decl., Exhibit "C", at Exhibit 4.

It therefore is difficult to understand the Berardi Defendants' argument, unless they are contending that Allstate was required to attach dozens of banker's boxes full of patient files to each expert's report. However, nothing in Rule 26(a)(2) required Allstate to produce these massive document sets to the Berardi Defendants as attachments to the expert reports. See, e.g., Joseph S. v. Hogan, 2011 U.S. Dist. LEXIS 76762 at * 15 (E.D.N.Y. 2011)("Nothing in Rule 26(a)(2) requires the expert report to contain all of the supporting data within its four corners so long as the report clearly explains its methodology ... ."); c.f. Walsh v. Chez, 583 F.3d 990, 994 (7th Cir. 2009) (the purpose of expert reports "is not to replicate every word that the expert might say on the stand" but "to convey the substance of the expert's opinion . . . so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert"). Rather, the expert reports simply were required to set forth the "facts or data considered by the experts in forming" their opinions. See Fed. R. Civ. P. 26(a)(2)(B). In this context, it is sufficient for the expert report to identify the source documents that the expert relied upon in preparing the report. See, e.g., Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P., 396 B.R. 810, 836 (Bankr. S.D.N.Y. 2008)(expert report that identified source documents upon which the expert relied satisfied Rule 26(a)(2)(B)).

In the present case, the expert reports clearly identified every source document upon which they were predicated. Allstate either produced these documents to the Berardi Defendants, or offered to produce these documents to the Berardi Defendants, well before it produced the expert reports, themselves. Indeed, as the Court may note, each of the expert reports primarily is predicated on the Berardi Defendants' own patient files – which the Berardi Defendants not only possessed before this action commenced, but which – in any case – Allstate produced back to the Berardi Defendants during discovery.

In any case, the Berardi Defendants had Allstate's expert reports by July 1, 2011 – the date on which they were due – yet they did not raise any issue with the expert reports until their own expert disclosure deadlines had passed. Though the Berardi Defendants affect outrage over Allstate's supposed non-disclosure of the source materials upon which the experts relied, they did not adopt this position, either, until after the due dates for their own expert disclosures had passed. It therefore seems as if the Berardi Defendants' indignation is a concoction designed to avoid the consequences of their own failure to abide by the Court's expert discovery deadlines.

Accordingly, the Berardi Defendants' motion to preclude should be denied.

## III.  The Berardi Defendants' "Impermissible Sampling" Argument is Meritless

The Berardi Defendants contend, in conclusory fashion, that Allstate's experts relied on impermissible sampling. See Conroy Decl. at ¶¶ 24-27; Berardi Memo at p. 4. The Court already has noted that this issue is improperly raised through a motion to preclude and instead should be raised through a Daubert motion. See Docket No. 246, fn. 2.

However, since the Berardi Defendants persist in raising the issue, Allstate is consigned to address it. First, the Shatzer Report did not rely on any sampling at all. Rather, as set forth in the Shatzer Report, Dr. Shatzer actually considered all of the range of motion and muscle tests that the Berardi Defendants purported to perform. See Levy Decl., Exhibit "E", at pp. 26-27, 33-39.

Second, the Berardi Defendants' contention that the samples considered by Dr. Braddom in the Braddom Report and Ms. Thelian in the Thelian Report were "preselected" by Allstate is both conclusory and belied by the facts. Ms. Thelian states in the Thelian Report that she, rather than Allstate, selected the 50 Arco and 50 Neomy patient files at random from a universe of approximately 250 patient files maintained by the Berardi Defendants, themselves. See Levy Decl., Exhibit "F", p. 2. The Braddom Report relied on a sample that actually was selected by Dr.

Izenman, an expert statistician who actually provided a separate expert report documenting the statistical methodology that he used to select the random sample for Dr. Braddom. See Levy Decl., Exhibits "C", "D". Tellingly, the Berardi Defendants do not address Dr. Izenman's report in their motion.

Third, the single case that the Berardi Defendants cite for their sampling argument, Rowe Entm't, Inc. v. William Morris Agency, Inc., 2003 U.S. Dist. LEXIS 15976 (S.D.N.Y. 2003) – and it is cited without any explanation as to its contents – dealt with a Daubert motion, and a sample that was neither randomized nor representative. See id. at * 2. Rowe did not, as the Berardi Defendants seem to posit, stand for the proposition that sampling is impermissible as a general matter. Indeed, it is clear that an expert's use of a sample, standing alone, does not render the expert's opinion inadmissible. See, e.g., Kargo Global, Inc. v. Advance Magazine Publrs., Inc., 2007 U.S. Dist. LEXIS 57320 at * 47 (S.D.N.Y. 2007)(expert's use of allegedly insufficient sample size went to weight, not admissibility, of his testimony); Playtex Prods. v. Procter & Gamble Co., 2003 U.S. Dist. LEXIS 8913 (S.D.N.Y. 2003)(errors in survey went to weight, not admissibility).

The Berardi Defendants' sampling argument therefore is meritless, and provides no basis for their motion to preclude.

## IV.    Allstate Responded Appropriately to the Berardi Defendants' 27th Interrogatory, and Allstate's Response Provides No Basis for the Present Motion

The Berardi Defendants also appear to contend that Allstate somehow failed to produce certain information relevant to its expert reports in response to the Berardi Defendants' 27th interrogatory. See Conroy Decl. at ¶ 27. This simply is not the case, because the Berardi Defendants' 27th interrogatory did not seek any information relative to Allstate's expert reports. Specifically, the Berardi Defendants' 27th interrogatory required Allstate to:

11

> Identify each and every item in Plaintiff's possession that supports the allegations that Defendants, Dr. Berardi, Arco, and Neomy, <u>were involved in</u> the allegations set forth in paragraphs 79-87 of the Complaint regarding the provision of allegedly fraudulent EDX tests.

(Emphasis added).

Thus, the Berardi Defendants' 27th interrogatory simply required Allstate to identify those items in its possession which demonstrated that the Berardi Defendants <u>took part in or participated in</u> the fraudulent NCV and EMG tests. While Allstate did assert general objections to Interrogatory No. 27, it went on to respond to Interrogatory No. 27 as follows:

> Subject to and without waiving any objections, information obtained from the New York State Department of State and New York State Office of the Professions websites demonstrates Dr. Berardi's purported ownership of Arco and Neomy. Billing and supporting documentation submitted by Defendants to Allstate further support the allegation that Dr. Berardi purports to own Arco and Neomy and that Dr. Berardi, Arco, and Neomy, were involved in the allegations set forth in paragraphs 79-87 of the Complaint. Subject to and without waiving any objections, Allstate will provide relevant non-privileged documents and/or information in response to this Interrogatory, to the extent Allstate is in possession of such information.

It therefore should be clear that Allstate provided a complete response to the <u>actual</u> question that the Berardi Defendants asked in their 27th interrogatory. Specifically, the Berardi Defendants asked for Allstate to identify items in its possession which demonstrated that the Berardi Defendants <u>were involved in</u> the fraudulent NCV and EMG tests. Allstate responded to the question that was asked by identifying: (i) the bills that were submitted through Arco and Neomy seeking payment for the NCV and EMG tests; and (ii) the New York State corporate documentation demonstrating that Dr. Berardi is the record-owner of Arco and Neomy.

It therefore is altogether unclear how Allstate's response to the Berardi Defendants' 27th interrogatory should operate to preclude admission of Allstate's expert testimony. Accordingly, to the extent that the Berardi Defendants seek to preclude Allstate's expert testimony on this basis, their motion should be denied.

**V.**   **To the Extent That the Berardi Defendants' Motion Constitutes an Attempt to Secure a Belated Extension in the Deadlines for Expert Disclosure, the Motion Should Be Denied**

As set forth above, and in the Levy Declaration, it is fairly clear that the Berardi Defendants do not expect to succeed on this motion, and thereby preclude Allstate's expert testimony. Rather, this motion seems to be a back-handed attempt by the Berardi Defendants to secure an extension in the deadlines for expert discovery, considering that the Berardi Defendants failed to produce an expert report or seek the deposition of Allstate's experts within the deadlines set by this Court.

To the extent that the Berardi Defendants' motion is intended to secure a nunc pro tunc extension in the expert discovery deadlines, it should be denied. First, the Berardi Defendants already made an untimely motion to extend the expert discovery deadlines, and the Court denied the motion with prejudice. See Docket Nos. 247, 248.

Second, as this Court recently noted in denying a motion to reopen expert disclosure:

> Where, as here, a scheduling order has been entered by the Court pursuant to Rule 16(b) of the Federal Rules of Civil Procedure, the court-ordered schedule "may be modified only for good cause . . . ." Fed. R. Civ. P. 16(b)(4); see also E.D.N.Y. Local Civ. R. 16.2 … As the Second Circuit has reiterated, "[a] finding of good cause depends on the diligence of the moving party." Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003) (collecting cases); see also Gavenda v. Orleans County, No. 95-CV-0251E (SC), 1996 U.S. Dist. LEXIS 9469, 1996 WL 377091, at *1 (W.D.N.Y. June 19, 1996) ("The requisite good cause is based on factors such as the diligence vel non of the party requesting an extension, bad faith vel non of the party opposing such extension, the phase of the litigation and prior knowledge of and notice to the parties."). Consequently, absent a sufficient justification for the movant's delay, the Court should decline to grant an application to reopen discovery. See King v. Friend of Farmer, Inc., No. 97 Civ. 9264 (BSJ) (RLE), 2000 U.S. Dist. LEXIS 3538, 2000 WL 290355, at *1 (S.D.N.Y. Mar. 17, 2000).

> In other words, an application to reopen discovery should be denied where the moving party "has not persuaded th[e] Court that it was impossible to complete the discovery by the established deadline." Gavenda, 1996 U.S. Dist. LEXIS 9469, 1996 WL 377091, at *2; see King, 2000 U.S. Dist. LEXIS 3538, 2000 WL 290355, at *1 ("party seeking to reopen discovery must show why the court's deadlines could not 'reasonably' have been made despite [its] diligence") (quoting Charles Alan Wright, et al., 6A Federal Practice &

13

Procedure § 1522.1, at 231 (2d ed. 1990) (alteration in original)) … "Discovery should not be extended when a party had an ample opportunity to pursue the evidence during discovery." Harris v. Computer Assocs. Int'l, Inc., 204 F.R.D. 44, 45 (E.D.N.Y. 2001) (collecting cases).

Gotlin v. Lederman, 2009 U.S. Dist. LEXIS 78818 at * 19 - * 21 (E.D.N.Y. 2009)(Mann, M.J.).

In the present case, the Berardi Defendants have not been diligent in producing expert reports to rebut Allstate's experts, or in seeking the depositions of Allstate's experts. Indeed, they did nothing until the deadline for service of their expert reports expired. Then, on August 19, 2011, the day after their expert report deadline expired, they filed a procedurally-defective motion to extend the deadline or to strike Allstate's expert reports. See Docket No. 245. When the Court denied this motion due primarily to the Berardi Defendants' failure to meet and confer (see Docket No. 246), the Berardi Defendants did not immediately meet and confer with Allstate and re-file their motion. Instead, they waited another month, until September 16, 2011 – the day after the deadline for expert depositions expired – and then made another procedurally-defective motion (see Docket No. 247), which the Court again denied due to their failure to meet and confer (see Docket No. 248).

Now, even though the Court already has denied their motion to extend the discovery deadlines – with prejudice (see Docket No. 248) – the Berardi Defendants persist in seeking an extension. See Conroy Decl. at ¶ 28.

The Berardi Defendants plainly have not been diligent in pursuing expert discovery, nor have they demonstrated that it was impossible to complete expert discovery by the established deadlines. Therefore, to the extent that their motion may be read as an attempt to secure an extension in the expert discovery deadlines, it should be denied – again – with prejudice.

## CONCLUSION

For the reasons stated herein, the Berardi Defendants' motion should be denied.

Dated: Uniondale, New York
       September 26, 2011

                    Respectfully submitted,

                    RIVKIN RADLER LLP


                    By:_____/s/_____
                          Barry I. Levy (BL 2190)
                          Max Gershenoff (MG 4648)

                    926 RXR Plaza
                    Uniondale, New York 11556-0926
                    Telephone:   (516) 357-3000
                    Facsimile:   (516) 357-3333

                    *Counsel for Plaintiff Allstate Insurance Company*

15